WEINBERGER, SECRETARY OF HEALTH, EDU-
CATION, AND WELFARE *v.* WIESENFELD

No. 73–1892.  Argued January 20, 1975—Decided March 19, 1975

*Keith A. Jones* argued the cause for appellant. On the brief were *Solicitor General Bork, Assistant Attorney General Hills,* and *Danny J. Boggs.*

*Ruth Bader Ginsburg* argued the cause for appellee. With her on the brief was *Melvin L. Wulf.**

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Social Security Act benefits based on the earnings of a deceased husband and father covered by the Act are payable, with some limitations, both to the widow and to the couple's minor children in her care. § 202 (g) of the Social Security Act, as amended, 42 U. S. C. § 402 (g).[1] Such benefits are payable on the basis of the

---

*Nancy Stearns* filed a brief for the Center for Constitutional Rights as *amicus curiae* urging affirmance.

[1] Section 402 (g) is headed "Mother's insurance benefits." It provides in pertinent part:

"(1) The widow and every surviving divorced mother (as defined in section 416 (d) of this title) of an individual who died a fully or currently insured individual, if such widow or surviving divorced mother—

"(A) is not married,

"(B) is not entitled to a widow's insurance benefit,

"(C) is not entitled to old-age insurance benefits, or is entitled

earnings of a deceased wife and mother covered by the Act, however, only to the minor children and not to the widower. The question in this case is whether this gender-based distinction violates the Due Process Clause of the Fifth Amendment.[2]

A three-judge District Court for the District of New Jersey held that the different treatment of men and women mandated by § 402 (g) unjustifiably discriminated against female wage earners by affording them less protection for their survivors than is provided to male em-

---

to old-age insurance benefits each of which is less than three-fourths of the primary insurance amount of such individual,

"(D) has filed application for mother's insurance benefits, or was entitled to wife's insurance benefits on the basis of the wages and self-employment income of such individual for the month preceding the month in which he died,

"(E) at the time of filing such application has in her care a child of such individual entitled to a child's insurance benefit . . .

.        .        .        .        .

shall . . . be entitled to a mother's insurance benefit for each month, beginning with the first month after August 1950 in which she becomes so entitled to such insurance benefits and ending with the month preceding the first month in which any of the following occurs: no child of such deceased individual is entitled to a child's insurance benefit, such widow or surviving divorced mother becomes entitled to an old-age insurance benefit equal to or exceeding three-fourths of the primary insurance amount of such deceased individual, she becomes entitled to a widow's insurance benefit, she remarries, or she dies. . . ."

The terms "fully" and "currently" insured are defined in 42 U. S. C. § 414. See n. 3, infra.

[2] "[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" Schneider v. Rusk, 377 U. S. 163, 168 (1964); see also Bolling v. Sharpe, 347 U. S. 497, 499 (1954). This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment. See, e. g., Schlesinger v. Ballard, 419 U. S. 498 (1975); Jimenez v. Weinberger, 417 U. S. 628, 637 (1974); Frontiero v. Richardson, 411 U. S. 677 (1973).

ployees. 367 F. Supp. 981, 991 (1973). We noted probable jurisdiction, 419 U. S. 822 (1974). We affirm.

I

Appellee Stephen C. Wiesenfeld and Paula Polatschek were married on November 15, 1970. Paula, who worked as a teacher for five years before her marriage, continued teaching after her marriage. Each year she worked, maximum social security contributions were deducted from her salary.[3] Paula's earnings were the couple's principal source of support during the marriage, being substantially larger than those of appellee.[4]

On June 5, 1972, Paula died in childbirth. Appellee was left with the sole responsibility for the care of their infant son, Jason Paul. Shortly after his wife's death, Stephen Wiesenfeld applied at the Social Security office in New Brunswick, N. J., for social security survivors' benefits for himself and his son. He did obtain benefits for his son under 42 U. S. C. § 402 (d) (1970 ed. and Supp. III),[5] and received for Jason $206.90 per month

---

[3] Thus, Paula Wiesenfeld was "currently insured" when she died, see n. 1, *supra*, because she had "not less than six quarters of coverage during the thirteen-quarter period ending with (1) the quarter in which [she] died." 42 U. S. C. § 414 (b).

[4] In 1970, Paula earned $9,808, and Stephen earned $3,100 as a self-employed consultant; in 1971, Paula earned $10,686 and Stephen $2,188; in 1972, Paula earned $6,836.35 before she died, and Stephen $2,475 for the entire year. Stephen completed his education before the marriage.

[5] Section 402 (d) is headed "Child's insurance benefits" and provides in pertinent part as follows:

"Every child . . . of an individual who dies a fully or currently insured individual, if such child—

"(A) has filed application for child's insurance benefits,

"(B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as

until September 1972, and \$248.30 per month thereafter. However, appellee was told that he was not eligible for benefits for himself, because § 402 (g) benefits were available only to women.[6]   If he had been a woman, he would

defined in section 423 (d) of this title) which began before he attained the age of 22, and
"(C) was dependent upon such individual—

.               .               .               .               .

"(ii) if such individual has died, at the time of such death . . .

.               .               .               .               .

shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits and ending with the month preceding whichever of the following first occurs—
"(D) the month in which such child dies or marries,
"(E) the month in which such child attains the age of 18, but only if he (i) is not under a disability (as so defined) at the time he attains such age, and (ii) is not a full-time student during any part of such month."

Thus, child's insurance benefits are now available without regard to whether the worker upon whose earnings benefits are based is the mother or father. This was not always the case. Originally, a child could receive benefits based on his mother's earnings only if he had not been living with his father and was being supported solely by his mother. Social Security Amendments of Aug. 10, 1939, § 202 (c), 53 Stat. 1364. This provision was amended in 1950 to provide automatic entitlement to otherwise eligible children of women workers who were currently insured, see nn. 1 and 3, *supra*, when they died, but retaining dependency qualifications if the mother's covered employment was not recent. Social Security Amendments of Aug. 28, 1950, § 101 (a), amending § 202 (d), 64 Stat. 483.   In 1967, children of women workers were made eligible for children's benefits on exactly the same criteria applied to children of male workers.   Social Security Amendments of 1967, Pub. L. 90–248, § 151, 81 Stat. 860.

[6] Appellee said in an affidavit that he was told orally at the Social Security office that he could not file an application for benefits on his own behalf.   The appellant Secretary does not dispute that the request for benefits was orally made and orally denied.   Tr. of Oral Arg. before District Court, June 20, 1973, p. 45; 367 F. Supp. 981, 985 n. 5.

have received the same amount as his son as long as he was not working, see 42 U. S. C. §§ 402 (d)(2) and (g) (2), and, if working, that amount reduced by $1 for every $2 earned annually above $2,400. 42 U. S. C. §§ 403 (b) and (f).[7]

Appellee filed this suit in February 1973,[8] claiming jurisdiction under 28 U. S. C. § 1331, on behalf of himself and of all widowers similarly situated.[9] He sought a declaration that § 402 (g) is unconstitutional to the extent that men and women are treated differently, an in-

---

[7] Stephen Wiesenfeld was employed until October 1972. However, since he earned $2,475 for the entire year 1972, n. 4, *supra*, he apparently would have been eligible for benefits, were he a woman, from June 1972 until he obtained employment again on February 5, 1973, at a salary of $1,500 per month. This lawsuit was filed on February 24, 1973. On September 14, 1973, appellee was dismissed from his position, so that he was unemployed and again eligible for benefits, but for the gender-based distinction, when the lower court opinion issued on December 11, 1973. Appellee, in an affidavit filed in September 1973, ascribed his employment difficulties in large part to the difficulties of childcare. In particular, he noted that he had "encountered severe difficulty in obtaining the services of a suitable housekeeper, to whom I could conscientiously entrust Jason's care. I have employed four housekeepers in the past year . . . ."

[8] Appellee did not seek administrative review of the denial under 42 U. S. C. § 405 (b). However, appellant stipulated that any administrative appeal would have been futile, since § 402 (g) on its face precludes granting benefits to men. Tr. of Oral Arg. before District Court, June 20, 1973, pp. 16–17. Nor does appellant now claim that § 405 (h), which provides that "[n]o findings of fact or decision of the Secretary shall be reviewed . . . except as herein provided" (see § 405 (g)), is a bar to this action. See *Public Utilities Comm'n of California* v. *United States*, 355 U. S. 534, 539–540 (1958); *Richardson* v. *Morris*, 409 U. S. 464 (1973) (*per curiam*); *Griffin* v. *Richardson*, 346 F. Supp. 1226 (Md.), aff'd, 409 U. S. 1069 (1972).

[9] The three-judge court declined to permit the action to proceed as a class action. 367 F. Supp., at 986–987. No appeal has been taken from this ruling.

junction restraining appellant from denying benefits under § 402 (g) solely on the basis of sex, and payment of past benefits commencing with June 1972, the month of the original application. Cross motions for summary judgment were filed. After the three-judge court determined that it had jurisdiction,[10] it granted summary judgment in favor of appellee, and issued an order giving appellee the relief he sought.

## II

The gender-based distinction made by § 402 (g) is indistinguishable from that invalidated in *Frontiero* v.

---

[10] The court recognized that the jurisdictional amount of $10,000 under 28 U. S. C. § 1331 is established as long as it does not "appear to a legal certainty" that the matter in controversy does not total $10,000, *St. Paul Mercury Indemnity Co.* v. *Red Cab Co.,* 303 U. S. 283, 289 (1938), and therefore that where an injunction commanding future payments is sought, there is no need to await accrual of $10,000 in back benefits to bring suit. However, it was troubled by the fact that appellee was employed on the day suit was filed, see n. 7, *supra,* and thus would not have been entitled to benefits on that day. It held that there was nonetheless jurisdiction because of the futility of dismissing the suit when the plaintiff could refile immediately and establish jurisdiction, since he was unemployed by the time of decision. We believe that there was jurisdiction in any event on the day the suit was filed. Benefits under § 402 (g) could be available to appellee, if he prevailed, until his infant child became 18, see §§ 402 (d), (g), and (s) (1). At the then-prevailing benefit rates, appellee would reach $10,000 in benefits if he collected full benefits for a little more than three years, see *supra,* at 640–641. Social security benefits are to some degree in the nature of insurance, providing present security and peace of mind from fear of future lack of earnings. Also, unlike disability benefits, see 42 U. S. C. § 423, these survivors' benefits do not depend upon ability to earn, but only upon actual earnings. Thus, they give a potential recipient a choice between staying home to care for the child and working. This opportunity for choice, and the potential right to as much as $53,640 worth of benefits ($2,980 per year times 18 years), certainly has a present value of $10,000, whether or not the claimant was eligible for benefits on the day he filed suit.

*Richardson,* 411 U. S. 677 (1973). *Frontiero* involved statutes which provided the wife of a male serviceman with dependents' benefits but not the husband of a servicewoman unless she proved that she supplied more than one-half of her husband's support. The Court held that the statutory scheme violated the right to equal protection secured by the Fifth Amendment. *Schlesinger* v. *Ballard,* 419 U. S. 498 (1975), explained: "In . . . *Frontiero* the challenged [classification] based on sex [was] premised on overbroad generalizations that could not be tolerated under the Constitution. . . . [T]he assumption . . . was that female spouses of servicemen would normally be dependent upon their husbands, while male spouses of servicewomen would not." *Id.,* at 507. A virtually identical "archaic and overbroad" generalization, *id.,* at 508, "not . . . tolerated under the Constitution" underlies the distinction drawn by § 402 (g), namely, that male workers' earnings are vital to the support of their families, while the earnings of female wage earners do not significantly contribute to their families' support.[11]

Section 402 (g) was added to the Social Security Act in 1939 as one of a large number of amendments designed to "afford more adequate protection to the family as a unit." H. R. Rep. No. 728, 76th Cong., 1st Sess., 7 (1939). Monthly benefits were provided to wives, children, widows, orphans, and surviving dependent parents of covered workers. *Ibid.* However, children of covered female workers were eligible for survivors' benefits only in limited circumstances, see n. 5, *supra,* and no benefits

---

[11] See the observations in *Frontiero,* 411 U. S., at 689 n. 23, that in view of the large percentage of married women working (41.5% in 1971), the presumption of complete dependency of wives upon husbands has little relationship to present reality. In the same vein, *Taylor* v. *Louisiana,* 419 U. S. 522 (1975), observed that current statistics belie "the presumed role in the home" of contemporary women. *Id.,* at 535 n. 17.

whatever were made available to husbands or widowers on the basis of their wives' covered employment.[12]

Underlying the 1939 scheme was the principle that "[u]nder a social-insurance plan the primary purpose is to pay benefits in accordance with the *probable needs* of the beneficiaries rather than to make payments to the estate of a deceased person regardless of whether or not he leaves dependents." H. R. Rep. No. 728, *supra,* at 7. (Emphasis supplied.) It was felt that "[t]he payment of these survivorship benefits and supplements for the wife of an annuitant are . . . in keeping with the principle of social insurance . . . ." *Ibid.* Thus, the framers of the Act legislated on the "then generally accepted presumption that a man is responsible for the support of his wife and children." D. Hoskins & L. Bixby, Women and Social Security: Law and Policy in Five Countries, Social Security Administration Research Report No. 42, p. 77 (1973).[13]

---

[12] Changes have been made in these provisions. For example, benefits are now available to husbands and aged widowers of covered workers if they can show that more than one-half of their support has been provided by their wives. 42 U. S. C. §§ 402 (c), (f). See also n. 5, *supra.* See generally Note, Sex Classifications in the Social Security Benefit Structure, 49 Ind. L. J. 181 (1973).

[13] See, *e. g.,* H. R. Rep. No. 728, 76th Cong., 1st Sess., 36 (1939): "[A] child is not usually financially dependent upon his mother"; 84 Cong. Rec. 6896 (1939) (remarks of Rep. Cooper): "[W]e now have under the provisions of this bill a program on a family basis, and we will take care of these people who will need this assistance because of the loss of the *father* or the *husband* and the loss of the pay and wages that *he* has been bringing into the family." (Emphasis supplied.) See also Report of the Committee on Social Insurance and Taxes, The President's Commission on the Status of Women 29 (1963): "It was decided at that time that if the determination of dependency were based on generally valid presumptions, there would be no need in most situations for detailed investigations of family financial relationships. Since the husband traditionally was the wage earner in the family and the wife was the homemaker,

Obviously, the notion that men are more likely than women to be the primary supporters of their spouses and children is not entirely without empirical support. See *Kahn* v. *Shevin,* 416 U. S. 351, 354 n. 7 (1974). But such a gender-based generalization cannot suffice to justify the denigration of the efforts of women who do work and whose earnings contribute significantly to their families' support.

Section 402 (g) clearly operates, as did the statutes invalidated by our judgment in *Frontiero,* to deprive women of protection for their families which men receive as a result of their employment. Indeed, the classification here is in some ways more pernicious. First, it was open to the servicewoman under the statutes invalidated in *Frontiero* to prove that her husband was in fact dependent upon her. Here, Stephen Wiesenfeld was not given the opportunity to show, as may well have been the case, that he was dependent upon his wife for his support, or that, had his wife lived, she would have remained at work while he took over care of the child. Second, in this case social security taxes were deducted from Paula's salary during the years in which she worked. Thus, she not only failed to receive for her family the same protection which a similarly situated male worker would have received, but she also was deprived of a portion of her own earnings in order to contribute to the fund out of which benefits would be paid to others. Since the Constitution forbids the gender-based differentiation premised upon assumptions as to dependency made in the statutes before us in *Frontiero,* the Constitution also forbids the gender-based differentiation that results in the efforts of female workers required to pay social security taxes producing less protection for their families than is produced by the efforts of men.

benefits were provided for wives, widows, and children on the basis of presumed dependency on the husband . . . ."

## III

Appellant seeks to avoid this conclusion with two related arguments. First, he claims that because social security benefits are not compensation for work done, Congress is not obliged to provide a covered female employee with the same benefits as it provides to a male. Second, he contends that § 402 (g) was "reasonably designed to offset the adverse economic situation of women by providing a widow with financial assistance to supplement or substitute for her own efforts in the marketplace," Brief for Appellant 14, and therefore does not contravene the equal protection guarantee.

### A

Appellant relies for the first proposition primarily on *Flemming* v. *Nestor*, 363 U. S. 603 (1960). We held in *Flemming* that the interest of a covered employee in future social security benefits is "noncontractual," because "each worker's benefits, though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system by taxation." *Id.*, at 609–610. Appellant apparently contends that since benefits derived from the social security program do not correlate necessarily with contributions made to the program, a covered employee has no right whatever to be treated equally with other employees as regards the benefits which flow from his or her employment.

We do not see how the fact that social security benefits are "noncontractual" can sanction differential protection for covered employees which is solely gender based. From the outset, social security old age, survivors', and disability (OASDI) benefits have been "afforded as a matter of right, related to past participation in the pro-

ductive processes of the country." Final Report of the Advisory Council on Social Security 17 (1938). It is true that social security benefits are not necessarily related directly to tax contributions, since the OASDI system is structured to provide benefits in part according to presumed need.[14] For this reason, *Flemming* held that the position of a covered employee "cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments." 363 U. S., at 610. But the fact remains that the statutory right to benefits *is* directly related to years worked and amount earned by a covered employee,[15] and not to the need of the beneficiaries directly. Since OASDI benefits do depend significantly upon the participation in the work force of a covered employee, and since only covered employees and not others are required to pay taxes toward the system, benefits must be distributed according to classifications which do not without sufficient justification differentiate among covered employees solely on the basis of sex.

---

[14] See *supra,* at 644. There has been a continuing tension in the OASDI system between two goals: individual equity, which accords benefits commensurate with the contributions made to the system, and social adequacy, which assures to all contributors and their families a tolerable standard of living. See J. Pechman, H. Aaron & M. Taussig, Social Security: Perspectives for Reform 33–34 (1968); Report of the Social Security Board, H. R. Doc. No. 110, 76th Cong., 1st Sess., 5 (1939). Rather than abandoning either goal, Congress has tried to meet both, by assuring that the protection afforded each contributor is at least that which his contributions could purchase on the private market. See H. R. Rep. No. 728, 76th Cong., 1st Sess., 13–14 (1939); H. R. Rep. No. 1300, 81st Cong., 1st Sess., 2 (1949).

[15] See 42 U. S. C. §§ 414, 415 for the correlation between years worked, amount earned, and the "primary insurance amount," which is the amount received by fully insured employees upon reaching retirement age. Benefits under § 402 (g) are 75% of the primary insurance amount of the covered employee.

## B

Appellant seeks to characterize the classification here as one reasonably designed to compensate women beneficiaries as a group for the economic difficulties which still confront women who seek to support themselves and their families. The Court held in *Kahn* v. *Shevin,* 416 U. S., at 355, that a statute "reasonably designed to further the state policy of cushioning the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden" can survive an equal protection attack. See also *Schlesinger* v. *Ballard,* 419 U. S. 498 (1975). But the mere recitation of a benign, compensatory purpose is not an automatic shield which protects against any inquiry into the actual purposes underlying a statutory scheme.[16] Here, it is apparent both from the statutory scheme itself and from the legislative history of § 402 (g) that Congress' purpose in providing benefits to young widows with children was not to provide an income to women who were, because of economic discrimination, unable to provide for themselves. Rather, § 402 (g), linked as it is directly to responsibility for minor children, was intended to permit women to elect not to work and to devote themselves to the care of children. Since this purpose in no way is premised upon any special disadvantages of women, it cannot serve to justify a gender-based distinction which diminishes the protection afforded to women who do work.

That the purpose behind § 402 (g) is to provide chil-

---

[16] This Court need not in equal protection cases accept at face value assertions of legislative purposes, when an examination of the legislative scheme and its history demonstrates that the asserted purpose could not have been a goal of the legislation. See *Eisenstadt* v. *Baird,* 405 U. S. 438 (1972); *Jimenez* v. *Weinberger,* 417 U. S., at 634; *U. S. Dept. of Agriculture* v. *Moreno,* 413 U. S. 528, 536–537 (1973).

dren deprived of one parent with the opportunity for the personal attention of the other could not be more clear in the legislative history. The Advisory Council on Social Security, which developed the 1939 amendments, said explicitly that "[s]uch payments [under § 402 (g)] are intended as supplements to the orphans' benefits *with the purpose of enabling the widow to remain at home and care for the children.*" Final Report of the Advisory Council on Social Security 31 (1938). (Emphasis supplied.) In 1971, a new Advisory Council, considering amendments to eliminate the various gender-based distinctions in the OASDI structure, reiterated this understanding: "Present law provides benefits for the mother of young . . . children . . . if she chooses to stay home and care for the children instead of working. In the Council's judgment, it is desirable to allow a woman who is left with the care of the children the *choice* of whether to stay at home to care for the children or to work." 1971 Advisory Council on Social Security, Reports on the Old-Age, Survivors, and Disability Insurance and Medicare Programs 30 (hereinafter 1971 Reports). (Emphasis supplied.)

Indeed, consideration was given in 1939 to extending benefits to all widows regardless of whether or not there were minor children. The proposal was rejected, apparently because it was felt that young widows without children can be expected to work, while middle-aged widows "are likely to have more savings than younger widows and many of them have children who are grown and able to help them." Report of the Social Security Board, H. R. Doc. No. 110, 76th Cong., 1st Sess., 7–8 (1939). See also Final Report of the Advisory Council on Social Security 31 (1938); Hearings on the Social Security Act Amendments of 1939 before the House Committee on Ways and Means, 76th Cong., 1st Sess., 61, 1217, 2169–2170; H. R. Rep. No. 728, 76th Cong., 1st Sess., 36–

37 (1939). Thus, Congress decided *not* to provide benefits to all widows even though it was recognized that some of them would have serious problems in the job market. Instead, it provided benefits only to those women who had responsibility for minor children, because it believed that they should not be required to work.

The whole structure of survivors' benefits conforms to this articulated purpose. Widows without minor children obtain no benefits on the basis of their husband's earnings until they reach age 60 or, in certain instances of disability, age 50. 42 U. S. C. §§ 402 (e)(1) and (5). Further, benefits under § 402 (g) cease when all children of a beneficiary are no longer eligible for children's benefits.[17] If Congress were concerned with providing women with benefits because of economic discrimination, it would be entirely irrational to except those women who had spent many years at home rearing children, since those women are most likely to be without the skills required to succeed in the job market. See Walker, Sex Discrimination in Government Benefit Programs, 23 Hastings L. J. 277, 278–279 (1971); Hearings, *supra,* at 61 (remarks of Dr. Altemeyer, Chairman, Social Security Board); Report of the Committee on Social Insurance and Taxes, The President's Commission on the Status of Women 31–32 (1963). Similarly, the Act now provides benefits to a surviving

---

[17] In certain cases, mother's benefits under § 402 (g) cease although some children are still eligible for children's benefits under § 402 (d). In particular, children continue to be eligible for benefits while full-time students until age 22 and, in some instances, for a few months thereafter. §§ 402 (d)(1)(F) and (d)(7). Yet, benefits to the mother under § 402 (g) cease if all children have reached 18 and are not disabled. § 402 (s)(1). This distinction also sustains our conclusion that § 402 (g) was intended only to provide an opportunity for children to receive the personal attention of one parent, since mother's benefits are linked to children's benefits only so long as it is realistic to think that the children might need their parent at home.

divorced wife who is the parent of a covered employee's child, regardless of how long she was married to the deceased or of whether she or the child was dependent upon the employee for support. §§ 402 (g), 416 (d)(3). Yet, a divorced wife who is not the mother of a child entitled to children's benefits is eligible for benefits only if she meets other eligibility requirements *and* was married to the covered employee for 20 years. §§ 402 (b) and (e), 416 (d).[18] Once again, this distinction among women is explicable only because Congress was not concerned in § 402 (g) with the employment problems of women generally but with the principle that children of covered employees are entitled to the personal attention of the surviving parent if that parent chooses not to work.

Given the purpose of enabling the surviving parent to remain at home to care for a child, the gender-based distinction of § 402 (g) is entirely irrational. The classification discriminates among surviving children solely on the basis of the sex of the surviving parent. Even in the typical family hypothesized by the Act, in which the husband is supporting the family and the mother is caring for the children, this result makes no sense. The fact

---

[18] Originally, no divorced wives were entitled to benefits on the basis of their former husbands' earnings. The provision for surviving divorced wives who are the mothers of children entitled to survivors' benefits was added in 1950. Social Security Amendments of 1950, § 101 (a), 64 Stat. 483. It was not until 1965 that benefits were provided for aged divorced wives and widows, premised upon a 20-year marriage. Social Security Amendments of 1965, Pub. L. 89–97, § 308, 79 Stat. 375. Both these groups of women were required to prove dependency upon the former husband. The proof-of-dependency requirements were eliminated in 1972. Social Security Amendments of 1972, Pub. L. 92–603, § 114, 86 Stat. 1348. This separate development of benefits for divorced women with children and those without reinforces the conclusion that the presence of children is the raison d'être of § 402 (g).

that a man is working while there is a wife at home does not mean that he would, or should be required to, continue to work if his wife dies. It is no less important for a child to be cared for by its sole surviving parent when that parent· is male rather than female. And a father, no less than a mother, has a constitutionally protected right to the "companionship, care, custody, and management" of "the children he has sired and raised, [which] undeniably warrants deference and, absent a powerful countervailing interest, protection." *Stanley* v. *Illinois,* 405 U. S. 645, 651 (1972). Further, to the extent that women who work when they have sole responsibility for children encounter special problems, it would seem that men with sole responsibility for children will encounter the same child-care related problems.[19]  Stephen Wiesenfeld, for example, found that providing adequate care for his infant son impeded his ability to work, see n. 7, *supra.*

Finally, to the extent that Congress legislated on the presumption that women as a group would choose to forgo work to care for children while men would not,[20]

_____

[19] The Commission on Railroad Retirement, commenting upon a similar provision of the railroad retirement system, significantly stated: "Statistically speaking, there are, of course, significant differences by sex in the roles played in our society. For example, far more women than men are primarily involved in raising minor children. But if the society's aim is to further a socially desirable purpose, e. g., better care for growing children, it should tailor any subsidy directly to the end desired, not indirectly and unequally by helping widows with dependent children and ignoring widowers in the same plight. In this example, it is the economic and *functional* capability of the surviving breadwinner to care for children which counts; the sex of the surviving parent is incidental." Report of the Commission on Railroad Retirement, Railroad Retirement System— Its Coming Crisis, H. R. Doc. No. 92–350, p. 378 (1972). (Emphasis supplied.)

[20] Precisely this view was expressed by the 1971 Advisory Council on Social Security, whose recommendations upon which gender-based

the statutory structure, independent of the gender-based classification, would deny or reduce benefits to those men who conform to the presumed norm and are not hampered by their child-care responsibilities. Benefits under § 402 (g) decrease with increased earnings, see, *supra,* at 641. According to appellant, "the bulk of male workers would receive no benefits in any event," Brief for Appellant 17 n. 11, because they earn too much. Thus, the gender-based distinction is gratuitous; without it, the statutory scheme would only provide benefits to those men who are in fact similarly situated to the women the statute aids.

Since the gender-based classification of § 402 (g) cannot be explained as an attempt to provide for the special problems of women, it is indistinguishable from the classification held invalid in *Frontiero.* Like the statutes there, "[b]y providing dissimilar treatment for men and women who are . . . similarly situated, the challenged section violates the [Due Process] Clause." *Reed* v. *Reed,* 404 U. S. 71, 77 (1971).

*Affirmed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

---

distinctions in the OASDI system to retain and which to discard were followed in the 1972 Social Security Amendments: "The Council believes that it is unnecessary to offer the same choice [whether to work or care for surviving children] to a man. Even though many more married women work today than in the past, so that they are both workers and homemakers, very few men adopt such a dual role; the customary and predominant role of the father is not that of a homemaker but rather that of the family breadwinner. A man generally continues to work to support himself and his children after the death or disability of his wife. The Council therefore does not recommend that benefits be provided for a young father who has children in his care." 1971 Reports 30.

MR. JUSTICE POWELL, with whom THE CHIEF JUSTICE joins, concurring.

I concur in the judgment and generally in the opinion of the Court. But I would identify the impermissible discrimination effected by § 402 (g) somewhat more narrowly than the Court does. Social Security is designed, certainly in this context, for the protection of the *family*. Although it lacks the contractual attributes of insurance or an annuity, *Flemming* v. *Nestor*, 363 U. S. 603 (1960), it is a contributory system and millions of wage earners depend on it to provide basic protection for their families in the event of death or disability.

Many women are the principal wage earners for their families, and they participate in the Social Security system on exactly the same basis as men. When the mother is a principal wage earner, the family may suffer as great an economic deprivation upon her death as would occur upon the death of a father wage earner. It is immaterial whether the surviving parent elects to assume primary child care responsibility rather than work, or whether other arrangements are made for child care. The statutory scheme provides benefits both to a surviving mother who remains at home and to one who works at low wages. A surviving father may have the same need for benefits as a surviving mother.* The statutory scheme therefore impermissibly discriminates against a female wage earner because it provides her family less protection than it

---

*I attach less significance to the view emphasized by the Court that a purpose of the statute is to enable the surviving parent to remain at home to care for a child. In light of the long experience to the contrary, one may doubt that fathers generally will forgo work and remain at home to care for children to the same extent that mothers may make this choice. Under the current statutory program, however, the payment of benefits is not conditioned on the surviving parent's decision to remain at home.

provides that of a male wage earner, even though the family needs may be identical. I find no legitimate governmental interest that supports this gender classification.

MR. JUSTICE REHNQUIST, concurring in the result.

Part III–B of the Court's opinion contains a thorough examination of the legislative history and statutory context which define the role and purpose of § 402 (g). I believe the Court's examination convincingly demonstrates that the only purpose of § 402 (g) is to make it possible for children of deceased contributing workers to have the personal care and attention of a surviving parent, should that parent desire to remain in the home with the child. Moreover, the Court's opinion establishes that the Government's proffered legislative purpose is so totally at odds with the context and history of § 402 (g) that it cannot serve as a basis for judging whether the statutory distinction between men and women rationally serves a valid legislative objective.

This being the case, I see no necessity for reaching the issue of whether the statute's purported discrimination against female workers violates the Fifth Amendment as applied in *Frontiero* v. *Richardson,* 411 U. S. 677 (1973). I would simply conclude, as does the Court in Part III–B of its opinion, that the restriction of § 402 (g) benefits to surviving mothers does not rationally serve any valid legislative purpose, including that for which § 402 (g) was obviously designed. This is so because it is irrational to distinguish between mothers and fathers when the sole question is whether a child of a deceased contributing worker should have the opportunity to receive the fulltime attention of the only parent remaining to it. To my mind, that should be the end of the matter. I therefore concur in the result.