**Helen de CASTRO, Plaintiff,**

v.

**Caspar WEINBERGER, the Secretary of Health, Education and Welfare, Defendant.**

**No. 74 C 1830.**

United States District Court, N. D. Illinois, E. D.

Sept. 30, 1975.

Sherwin & Sherwin, Chicago, Ill., for plaintiff.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., for defendant.

Before TONE, Circuit Judge, and MAROVITZ and WILL, District Judges.

## OPINION

WILL, District Judge.

The plaintiff, Helen de Castro, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Secretary of Health, Education and Welfare denying her application for benefits. Helen de Castro is currently 60 years of age. She and the wage earner, Albert de Castro, were married on September 9, 1946, and were divorced on February 8, 1968, after more than 21 years of marriage. The divorce decree provided for no alimony or support and plaintiff has received none from her former husband since the entry of the decree.

Two children, Rosemary de Castro and Catherine de Castro, were born of the marriage. Catherine, 24 years of age, is mentally retarded, has been mentally disabled since birth, and is acknowledged to be entitled to child's insurance benefits on an entitled wage earner's account. Plaintiff has continually cared for Catherine since December 5, 1966 when Albert de Castro left plaintiff and his family and returned to the Philippine Islands where he has since remained. For a time thereafter, plaintiff was able to work, securing assistance with Catherine from her mother. Since her mother's death she has had to forego work to care for Catherine. Albert de Castro became entitled to old age insurance benefits on September 2, 1971, effective March, 1971.

At the heart of plaintiff's complaint is a constitutional challenge directed against section 202 of the Social Security Act, 42 U.S.C. § 402, which provides for benefits to the wife of a qualified wage earner who has a disabled child within her care. By reason of the defendant's interpretation of that section as excluding otherwise qualified but divorced wives who have not attained the age of 62 years, plaintiff claims that she has been arbitrarily discriminated against in violation of the principles of equal protection embodied in the Fifth Amendment. See *Weinberger v. Wiesenfeld*, 420 U.S. 636, 643, 95 S.Ct. 1225, 43 L.

Ed.2d 514 (1975). Since plaintiff seeks both a declaration that section 402(b)(1)(B) is unconstitutional on its face and as applied to her, as well as injunctive relief enjoining the enforcement of the statute to deny her insurance benefits and ordering payments of benefits from the date of first entitlement, plaintiff has properly requested the convening of a three-judge court pursuant to 28 U.S.C. §§ 2281, 2282. Because there are no issues of material fact surrounding the constitutional dispute, the parties have submitted to the three-judge court cross motions for summary judgment, which, for the reasons set forth hereinafter, will be granted in plaintiff's favor.

### I.

Helen de Castro qualifies as a divorced wife under the Act which provides:

§ 416 * * *

(d) The term "divorced wife" means a woman divorced from an individual, but only if she had been married to such individual for a period of 20 years immediately before the date the divorce became effective.

Plaintiff has not remarried. Furthermore, because she has not reached the age of 62 years, she is not entitled to benefits in her own right.

Assuming that she qualified under § 402(b)(1), plaintiff filed an application for benefits on the account of Albert de Castro as the divorced wife of a wage earner having in her care a child entitled to benefits. Section 402(b)(1) provides in part:

The wife (as defined in section 416 (b) of this title) and every divorced wife (as defined in section 416(d) of this title) of an individual entitled to old-age or disability insurance benefits, if such wife or such divorced wife—

(A) has filed application for wife's insurance benefits,

(B) has attained age 62 or (in the case of a wife) has in her care (individually or jointly with such individual) at the time of filing such application a child entitled to a child's insurance benefit on the basis of the wages and selfemployment income of such individual.

* * * * * *

shall (subject to subsection (s) of this section) be entitled to a wife's insurance benefit . . ..

Her application was initially denied. After a hearing before an Administrative Law Judge, however, it was determined that she was entitled to a wife's benefits effective January 1, 1973. Thereafter, the Appeals Council of the Social Security Administration on its own motion decided to review the decision of the Administrative Law Judge, and, on May 3, 1974, reversed his decision, concluding that section 402(b)(1)(B) did not extend to divorced wives under age 62 who were caring for a dependent child but only to married wives. Accordingly, plaintiff was denied benefits. She now seeks review of the Appeal Council's ruling.

Plaintiff's challenge to the statutory classification, which deprives a divorced wife [1] with dependent children of a wife's benefits, is framed in the alternative. She contends that freedom of personal choice in matters of marriage and family life, which includes the right to obtain a divorce, is a "fundamental" right protected under the Constitution, and that marital status should be considered as an inherently suspect classification. She argues that the Court should employ the more rigorous strict scrutiny test in determining whether the distinction found in 402(b)(1)(B) is constitutionally sound. In the event this standard

---

1. We use the terms "divorced wife" and its plural "divorced wives" herein as defined in 28 U.S.C. § 416(d), i. e., a woman divorced from a covered wage earner but only if she had been married to him for at least 20 years immediately preceding the divorce. In the context of this case, we need not and do not reach the question of whether the 20 year marriage requirement is constitutionally valid.

for review is not found to be controlling, she argues that even under the more traditional "rational basis test" the classification must fail.

■ Plaintiff's attempt to invoke the more exacting strict scrutiny test as the appropriate standard for review here is without merit. Relying on the Supreme Court's recognition of the right to marry as "one of the vital personal rights essential to the orderly pursuit of happiness"[2] and the Court's characterization as fundamental of certain natural incidents of marriage, the plaintiff argues that freedom to dissolve the bonds of matrimony should also be recognized as a fundamental personal right and accorded the same constitutional protection extended the right to marry.

While it is undeniable that divorce is becoming more commonplace, we do not agree with plaintiff that it is a right recognized by the Constitution as fundamental to the pursuit of happiness. On the contrary, as expressed by the court in *Sosna v. State of Iowa*, 360 F.Supp. 1182 (N.D.Iowa, 1973), affirmed by the United States Supreme Court, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975):

> Unlike voting or welfare, the concept of divorce is not a constitutional right nor is it a basic necessity to survival. *Sosna, supra,* at 1184.

■ Nor do we find plaintiff's suggestion that marital status should be aligned with race, national origin and alienage as a "suspect" classification to be persuasive.[3] Marital status is not an

immutable characteristic determined solely by the accident of birth nor are statutory distinctions based upon it inherently odious or invidious. Absent these necessary criteria, marital status is clearly distinguishable from recognized suspect classifications, and does not warrant close judicial scrutiny.[4]

At issue here is legislation in the area of social welfare. Recognizing the wide latitude afforded Congress in making statutory classifications affecting public health, safety and welfare, the courts have customarily applied the traditional rational basis test as the appropriate standard for review. So long as the statutory classification bears some rational relationship to a legitimate legislative purpose and is free from invidious discrimination, it has withstood equal protection and Fifth Amendment challenges. *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1425 (1960); *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The primary issue before the court then is whether the exclusion of divorced wives from § 402 benefits has a rational relationship to some legitimate governmental purpose and is not an invidious discrimination.

II.

■ The defendant has attempted to justify § 402(b)(1)(B)'s limited coverage on the following five grounds:

1. Section 402(b) was originally intended to afford more adequate protec-

2. *Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967).

3. The Supreme Court has not yet decided whether classifications on sex are to be viewed as inherently suspect and thus subject to close judicial scrutiny. See *White v. Fleming*, 522 F.2d 730, pp. 733-734 (7th Cir. 1975).

4. The instant case is distinguishable from *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) affirming 367 F.Supp. 981 (D.N.J.1973) which held that the gender-based classification found in 42 U.S.C. § 402(g) limiting benefits to widows and surviving divorced mothers who met conditions set out in the section while

excluding widowers who met those conditions was constitutionally invalid. The Court noted that, since Social Security taxes were deducted from plaintiff's wife's salary during the years in which she worked, she both failed to receive the same protection for her family that a similarly situated male would have received and was deprived of a portion of her own earnings in order to provide benefits to others. The Court concluded that the Due Process Clause of the Fifth Amendment prohibited a sex-based classification which resulted in the employment efforts of women producing less protection for their families than the efforts of men.

tion to the family as a unit, and since divorce terminates the legal relationship between the wage earner and his former spouse, the exclusion of divorced wives from these benefits is clearly explainable.

2. Allowing these benefits to divorced wives would potentially entitle them to greater benefits than married wives, since the domestic relations courts generally provide for support payments.

3. Social Security constitutes remedial welfare legislation and Congress need not attack every aspect of a problem. Here it chose to attack the more urgent need of married wives with dependent children.

4. The budgetary consequences of allowing payment to plaintiff and other qualified divorced wives could seriously affect the actuarial integrity of the Social Security trust fund.

5. The controversy is non-justiciable because the remedy sought by the plaintiff, which would expand the benefit class, encroaches upon grounds constitutionally reserved to Congress.

### A.

The defendant's argument characterizing the preservation and integrity of the family unit as an acceptable rationale for excluding divorced wives fails to recognize the significant changes in the nature and extent of the Act's coverage and its present posture. When originally enacted in 1935, the Social Security Act provided benefits only to the covered wage earner. It is true that, in 1939, when benefits were first extended to other members of the wage earner's immediate family, the amendments to the Act were designed to "afford more adequate protection to the family as a unit." [5] Monthly benefits were provided at that time for wives, children, widows, orphans and surviving dependent parents of covered workers. As early as 1950, however, Congress expanded the coverage to include surviving divorced wives who were mothers of children entitled to survivors' benefits. In 1965, recognizing that it is not uncommon for a marriage to end in divorce after many years at a time when the wife is too old to build up her own substantial social security earnings record even if she can find a job, Congress amended this section once more and provided for old age benefits to divorced wives who had been married to a wage earner for at least 20 years prior to divorce. Congress' expressed purpose for this legislation was to provide protection for women who have spent their lives in marriages which are dissolved when they are far along in years—especially housewives who have not been able to work and earn Social Security benefit protection of their own.

It is clear from the foregoing that, if Congress ever intended to use the Social Security laws to preserve the integrity of the family unit by excluding divorced wives of covered wage earners, the policy has long since been abandoned. To suggest that denying benefits to divorced wives whose marriages lasted for more than 20 years and who are caring for dependent children born of such marriages was intended by Congress to aid in preserving family units is obvious nonsense.

### B.

Defendant also argues that allowing benefits to divorced wives under 62 years of age pursuant to § 402(b)(1)(B) would potentially entitle them to greater benefits than married wives since the domestic relations courts normally provide for support payments. This argument is without merit, since a married wife's benefits under § 402(b)(1) would normally be augmented by the income of the husband, whether that income consists of allowable wages, benefits under the Social Security Act, or money from other sources. Child support payment decrees seek to remedy the lack of enjoyment by a divorced wife of this kind of financial support. The wife and divorced wife

---

5. Note that "more adequate protection," not preservation and integrity of the family was the stated objective.

under § 402(b)(1)(B), consequently, are at least equal so far as financial support is concerned. If any disparity exists, it is against the divorced wife who may very often find herself with an inadequate child support allowance or incapable of enforcing the child support decree. The instant case, where the husband fled the jurisdiction of the divorce court, is a pointed example. Moreover, a married wife with a retired husband who can care for the dependent child, has a far better opportunity for employment and income than a divorced wife.

Defendant's second argument, therefore, fails to support a rational distinction between married and divorced wives under § 402(b)(1)(B).

### C.

Defendant further contends that, since Congress is not required to attack every aspect of a problem, it was justified in addressing that which it deemed most urgent and of greater magnitude—the needs of the married wife. Citing *Williamson v. Lee Optical Company, Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955), defendant asserts that Congress could legally recognize the existence of need in both married and divorced wives with dependent children but provide benefits only to married wives and exclude divorced wives. We disagree.

First, as previously discussed, there is no rational basis for concluding that a married wife having a dependent child in her care has a greater economic need than a divorced wife caring for such a child. In many cases the reverse will be true. Second, *Williamson v. Lee Optical Co., supra*, fails to support defendant's contention that different treatment of married and divorced wives under § 402(b)(1)(B) is justifiable. In that case, the Supreme Court held that an Oklahoma statute, which prohibited opticians from fitting without a prescription old glasses into new frames or supplying lens, whether new or duplicat-

es of lost or broken lens, while exempting from this regulatory system sellers of ready-to-wear glasses, did not violate the Equal Protection Clause of the Fourteenth Amendment. The Court supported this holding as follows (p. 489, 75 S.Ct. p. 465):

> The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. . . . Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others. . . . The prohibition of the Equal Protection Clause goes no further than the invidious discrimination. We cannot say that [the] point has been reached here. For all this record shows, the ready-to-wear branch of this business may not loom large in Oklahoma or may present problems of regulation distinct from the other branch.

The instant case is distinguishable from *Williamson*. The problem dealt with by the statute here is the needs of mothers qualifying for wife's benefits under the statute. Within this area of need, no rational justification exists for distinguishing between married wives and divorced wives who have similar needs and who otherwise qualify for benefits. The difference between classifications involving regulation of businesses and those affecting human needs is obvious.

In *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Supreme Court determined that Maryland's maximum grant regulation of assistance to families with dependent children passed muster under the Equal Protection Clause of the Fourteenth Amendment. In explicating the

rational basis underlying the regulation, the Court said (p. 486, 90 S.Ct. p. 1162):

> We need not explore all the reasons that the State advances in justification of the regulation. It is enough that a solid foundation for the regulation can be found in the State's legitimate interest in encouraging employment and in avoiding discrimination between welfare families and the families of the working poor. By combining a limit on the recipient's grant with permission to retain money earned, without reduction in the amount of the grant, Maryland provides an incentive to seek gainful employment. And by keying the maximum family AFDC grants to minimum wage a steadily employed head of a household receives, the State maintains some semblance of an equitable balance between families on welfare and those supported by an employed breadwinner. (footnote omitted)

Subsequent to the submission of this case, the Supreme Court decided *Weinberger v. Salfi, supra,* holding that the nine-month duration-of-relationship requirements of §§ 416(c)(5) and (e)(2) are not unconstitutional. The majority found that the avowed Congressional purpose of preventing the use of sham marriages to secure Social Security benefits constituted a rational basis for excluding a widow who was married to a deceased wage earner less than nine months unless she is the mother of his child; adopted a child of his under the age of 18 while married to him or he adopted a child of hers under the same circumstances; or, if during their marriage they adopted a child under the age of 18. The Court recognized that the requirement might exclude some legitimate claimants and not exclude some sham arrangements, but concluded that "Congress could rationally choose to adopt such a course."

No similar Congressional purpose or rational objective is apparent with respect to the exclusion of wives divorced after more than 20 years of marriage who are caring for a dependent child; born of the marriage. Nor, as subsequently discussed herein, can it be urged here, as the Secretary did in *Salfi,* that Congress sought to assure that payments would be made only to risks actuarially covered by the insurance program.

As distinguished from the instant case, the cases cited by defendant and *Salfi* involved statutory classifications which bore a reasonable relation to the legitimate objectives of legislation. No such relationship exists in the statutory distinction here involved.

### D.

Defendant argues that the actuarial integrity of the relevant trust fund would be seriously affeced by an adverse ruling. No data to support this contention has been furnished to the Court other than an estimate that 1,000 divorced wives as defined in § 416(d) would receive benefits at an additional annual cost of approximately $1,000,000. The defendant simply asserts the bald conclusion that providing benefits to divorced wives caring for dependent children would require a reduction in benefit payments to married wives caring for such children. The effect on the Social Security Act trust fund if payments to any group are increased or the group is expanded is far more complicated than that. Obviously, amounts are collected from eligible wage earners who are the parents of dependent children without regard to their marital status or the time of their divorce. Plaintiff's husband presumably contributed through all the years of their marriage. That they were divorced shortly before the time his wife would have become eligible for dependent child benefits had they remained married cannot seriously be urged to have been contemplated by Congress in making the distinction between married and divorced wives or in calculating the benefits.

■ While we recognize possible budgetary consequences of a ruling declaring the instant classification viola-

tive of the Equal Protection Clause, this does not warrant preserving the invidious discrimination here involved. The Supreme Court in *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968), rejected the proposition that fiscal considerations may support invidious class distinctions as follows (p. 633, 89 S.Ct. p. 1330):

> We recognize that a State has a valid interest in preserving the fiscal integrity of its programs. It may legitimately attempt to limit its expenditures, whether for public assistance, public education, or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens. It could not, for example, reduce expenditures for education by barring indigent children from its schools. Similarly, in the cases before us, appellants must do more than show that denying welfare benefits to new residents saves money. The saving of welfare costs cannot justify an otherwise invidious classification. (footnote omitted)

Since no rational relationship exists between the statutory purpose of providing benefits for wives who care for children qualifying for a dependent child's benefits and the statutory distinction which permits only married wives under the age of 62 years to receive such benefits, the distinction created by the statute is clearly invidious.

### E.

Defendant argues finally that, because a decision in favor of plaintiff in this case and possible similar judicial intervention in other cases which challenge the operation of the Social Security benefit system might result in an increase in the Social Security tax rate, the judiciary cannot grant effective relief without compelling the exercise of powers reserved to Congress under Article I, section 8 of the Constitution. The activation of such Congressional power by the judiciary is constitutionally impermis-

sible, defendant continues, rendering non-justiciable any controversy involving such judicial interference.

Plaintiff answers this contention by urging that, while the initial policy decision identifying persons to be beneficiaries under the Social Security Act is a matter particularly appropriate for Congressional discretion, Congress may not make unconstitutional distinctions and classifications. Accordingly, once that discretion has been exercised, the determination of whether the Congressional choices are permissible under the Constitution devolves upon the courts. We agree.

Most, if not all, decisions invalidating some aspect of social welfare legislation have a bearing upon monies to be paid from the federal treasury. See for example *Weinberger v. Wiesenfeld, supra; Richardson v. Belcher, supra; Dandridge v. Williams, supra.* Clearly, the determination of the constitutional validity of classifications adopted by Congress is within the province of the judiciary. *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974). Judicial authority to make such determinations is not altered by their social or fiscal impact. The instant controversy is judicially cognizable. To hold otherwise would leave Congress free to legislate unconstitutional classifications with no avenue of redress if, as is frequently the case, a constitutionally valid classification will involve the expenditure of federal funds.

### CONCLUSION

We hold that 42 U.S.C. § 402(b)(1)(B) invidiously discriminates against divorced wives as defined in § 416(d) of the Code in violation of the Fifth Amendment. Defendant is, accordingly, enjoined from applying the statute in a manner which would deny plaintiff the benefits to which she is entitled under the Social Security Act and to pay plaintiff benefits from the date of first entitlement and so long as she remains eligible pursuant to the standards set forth in this opinion.