## Death Benefits for Surviving Spouses of Certain Commonwealth Employes

KANE, Attorney General, YAKOWICZ, Solicitor General, and STITTER, Deputy Attorney General, March 17, 1976—Your predecessor, in response to an inquiry from the Pennsylvania Commission for Women, requested our opinion on the status of the Act of December 8, 1959, P.L. 1718 (No. 632), as amended, 61 P.S. §§951-952, in light of recent court decisions regarding equal protection based on sex and the Pennsylvania Equal Rights Amendment, Pa. Constitution art. I, sec. 28.

It is our opinion, and you are hereby advised, that a recent decision of the United States Supreme Court and the Pennsylvania Equal Rights Amendment require this statute to be administered to provide benefits to widowers as well as widows of Department of Justice and Department of Public Welfare employes who die of injuries received in any of the circumstances described in the statute.

Act 632 of 1959 provides:

"Any employe of a State penal or correctional institution under the Bureau of Correction of the Department of Justice and any employe of a State

mental hospital or Youth Development Center under the Department of Public Welfare, who is injured during the course of his employment by an act of any inmate or any person who has been committed to such institution by any court of the Commonwealth . . . and any employe of County Boards of Assistance injured by act of an applicant for or recipient of public assistance and any employe of the Department of Public Welfare who has been assigned or who has volunteered to join the fire fighting force of any institution of the Department of Public Welfare injured while carrying out fire fighting duties, shall be paid, by the Commonwealth of Pennsylvania, his full salary . . .

*"The widow and minor dependents of any employe who dies within one year as a result of such injuries shall be paid benefits equal to fifty percent of full salary of the deceased employe.*

*"When a widow and minor dependents not in her custody are entitled to payments, one-half of such payments shall be paid to the widow and one-half to the dependents. In every case the amount payable to minor dependents shall be divided equally among them and be paid to the persons or institutions having custody of them.*

*"In the case of a widow or a widow with minor dependents in her custody, such benefits shall terminate when such widow remarries . . ."* (Emphasis added.)

The statute further provides that any benefits received under this act shall be reduced by the amount of any workmen's compensation benefits received or collected by the widow or minor dependents because of the same injury. Furthermore, a widow or minor dependent who is receiving bene-

fits under the Federal Social Security Law is barred from receiving benefits under this act.

The United States Supreme Court in Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S. Ct. 1225 (1975), recently examined a gender-based distinction mandated by provisions of the Social Security Act, 42 U.S.C. §402(g), August 14, 1935, 49 Stat. 623, as amended, which granted survivor's benefits based on the earnings of a deceased husband and father both to his widow and to his minor children, but granted benefits on a deceased wife and mother's earnings only to her minor children and not to her widower. The court held that this distinction was irrational in that it provided dissimilar treatment for men and women who were similarly situated, and directed that the benefits be paid to the plaintiff widower. The court examined the legislative history of the challenged provision, and found that the sex-based distinction was based on the " 'then generally accepted presumption that a man is responsible for the support of his wife and children.' " The court said:

"Obviously, the notion that men are more likely than women to be the primary supporters of their spouses and children is not entirely without empirical support. See Kahn v. Shevin, 416 U.S. 351, 354 n.7 (1974). But such a gender-based generalization cannot suffice to justify the denigration of the efforts of women who do work and whose earnings contribute significantly to their families' support.

"Section 402(g) clearly operates, as did the statutes invalidated by our judgment in Frontiero [v. Richardson, 411 U.S. 677 (1973)], to deprive women of protection for their families which men receive as a result of their employment. Indeed,

the classification here is in some ways more pernicious. First, it was open to the servicewoman under the statutes invalidated in Frontiero to prove that her husband was in fact dependent upon her. Here, Stephen Wiesenfeld was not given the opportunity to show, as may well have been the case, that he was dependent upon his wife for his support, or that, had his wife lived, she would have remained at work while he took over care of the child. Second, in this case social security taxes were deducted from Paula's salary during the years in which she worked. Thus, she not only failed to receive for her family the same protection which a similarly situated male worker would have received, but she also was deprived of a portion of her own earnings in order to contribute to the fund out of which benefits would be paid to others. Since the Constitution forbids the gender-based differentiation premised upon assumptions as to dependency made in the statutes before us in Frontiero, the Constitution also forbids the gender-based differentiation that results in the efforts of women workers required to pay social security taxes producing less protection for their families than is produced by the efforts of men." 420 U.S. 636, 645.

 ". . .

"Given the purpose of enabling the surviving parent to remain at home to care for a child, the gender-based distinction of §402(g) is entirely irrational.

"The classification discriminates among surviving children solely on the basis of the sex of the surviving parent. Even in the typical family hypothesized by the Act, in which the husband is supporting the family and the mother is caring for

the children, this result makes no sense. The fact that a man is working while there is a wife at home does not mean that he would, or should be required to, continue to work if his wife dies. It is no less important for a child to be cared for by its sole surviving parent when that parent is male rather than female. And a father, no less than a mother, has a constitutionally protected right to the 'companionship, care, custody, and management' of 'the children he has sired and raised, [which] undeniably warrants deference and, absent a powerful countervailing interest, protection.' Stanley v. Illinois, 405 U.S. 645, 651 (1972). Further, to the extent that women who work when they have sole responsibility for children encounter special problems, it would seem that men with sole responsibility for children will encounter the same childcare related problems. Stephen Wiesenfeld, for example, found that providing adequate care for his infant son impeded his ability to work. . . ." 420 U.S. 636, 652.

This reasoning is equally applicable to Act 632 of 1959. There is no legislative history to indicate the intent of the legislature in enacting this statute, but undoubtedly the General Assembly's prime purpose was to provide benefits for the families of certain State employes engaged in high risk occupations who are injured or killed in the line of duty. The original Act 632 of December 8, 1959, dealt only with employes of State penal and correctional institutions. In 1961, the statute was amended to include other employes as enumerated above: Act of September 2, 1961, P.L. 1224. In making provisions for widows and dependent children in cases where the covered employe was killed, the legislature was recognizing that many wives are depen-

dent upon their husbands for their support. However, the statute does not require that the widow be or has been incapable of supporting herself and/or her children in order to qualify for benefits.

As written, the benefits would be available equally to a childless widow capable of self-support as well as to a widow with no marketable skills who is the mother of several small children. No provision is made for the widower of a deceased female employe, presumably on the assumption that every man is capable of supporting himself. And yet, a disabled widower, or a working man with small children to support, is in as much need of help as most widows similarly situated. There is, in fact, no possible State interest which could be served by limiting the application of this statute to the surviving spouses of male employes and excluding those of female employes.

A similar result must be reached under the Pennsylvania Equal Rights Amendment, Pennsylvania Constitution, art. I, sec. 28. The Commonwealth Court has held that the State ERA is "at least broad enough in scope" to prohibit discrimination proscribed by the Equal Protection Clause of the Fourteenth Amendment. Commonwealth v. P.I.A.A., 18 Pa. Commonwealth Ct. 45, 334 A.2d 839 (1975). And see also Commonwealth v. Butler, 458 Pa. 289, 328 A.2d 851 (1974); Hopkins v. Blanco, 457 Pa. 90, 320 A.2d 139 (1974); Henderson v. Henderson, 458 Pa. 97, 327 A.2d 60 (1974); Wiegand v. Wiegand, 226 Pa. Superior Ct. 278, 310 A.2d 426 (1973).

It is a maxim of statutory construction that the legislature, in enacting statutes, does not intend an unconstitutional result: 1 Pa. C.S. §1922(3). When a statute is clearly contrary to the Constitu-

tion, courts have attempted to ascertain whether "it more nearly accords with [the legislature's] wishes to eliminate its policy altogether or extend it in order to render what [the legislature] plainly did intend, constitutional." Welsh v. United States, 398 U.S. 333, 355-56, 90 S. Ct. 1792 (1970).

Since the prime purpose of the legislature in enacting 61 P.S. §§951-952 was to provide protection for the families of State employes in dangerous occupations, every effort must be made to preserve that intent by giving the statute a constitutional interpretation. We think this can best be done by reading the statute as if the word "widow" also included "widower,"[1] until such time as the legislature clarifies the statute by appropriate amendment.[2]

---

1. Section 1902 of the Statutory Construction Act of 1972, 1 Pa. C.S. §902, provides, in part: "Words used in the masculine gender shall include the feminine and neuter."

In view of the Equal Rights Amendment, reading the feminine "widow" to include the masculine "widower" is equally appropriate.

2. We note in passing that the Supreme Court in Wiesenfeld distinquished the earlier case of Kahn v. Shevin, 416 U.S. 351, 94 S. Ct. 1734 (1974), on the ground that "mere recitation of a benign, compensatory purpose is not an automatic shield which protects against any inquiry into the actual purpose of a statutory scheme.": 420 U.S. at 648. In addition, the Supreme Court had noted in the Kahn decision itself that its holding was dictated largely by its long standing policy that " '[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have a large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.' Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359." 416 U.S. at 355. Since Act 632 is not a tax statute, it is not unlikely that even under a Fourteenth Amendment "rational basis" test, the result enunciated herein would be reached.

You are, therefore, advised that the widower of any female employe of the Department of Justice or the Department of Public Welfare covered by Act 632 of 1959, as amended, killed in the line of duty, shall receive benefits specified for widows in the statute.[3] As with widows, such benefits shall be terminated upon remarriage of the widower.

3. Your office has advised me that no female employe covered by Act 632 has ever been killed in the line of duty. Therefore, in practical effect, this opinion will be prospective only.