295 So.2d 235 (1974)
Alton D. WHITT
v.
Estelle Mae VAUTHIER, his wife.
No. 5752.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 1974.
Rehearing Denied June 18, 1974.
Writ Refused September 13, 1974.
*236 Steven K. Faulkner, Jr., New Orleans, for defendant-appellant.
Floyd J. Reed, New Orleans, for plaintiff-appellee.
Before GULOTTA, J., and GAUDIN, and ZACCARIA, JJ. Pro Tem.
H. CHARLES GAUDIN, Judge Pro Tem.
This is an appeal by Mrs. Estelle Mae Vauthier Whitt from a judgment denying permanent alimony.
Four persons, including Mrs. Whitt and her husband, Alton D. Whitt, testified at the trial. The others were Mrs. Charlene Locassio, Mrs. Whitt's daughter by her first marriage; and Charles Conrad, a business associate of Mr. Whitt.
In his reasons for judgment, the Trial Judge stated:
"The Court is of the opinion that Mrs. Estelle Mae Vauthier Whitt failed to carry her burden of proof that she was free of fault.
"Under the circumstances, Mrs. Whitt is not entitled to alimony for her own support."
Mr. Whitt's contentions, among them the charge that Mrs. Whitt refused to have sexual relations with him since 1954, were emphatically denied by Mrs. Whitt, who countered with the claim that Mr. Whitt drank to excess and physically struck her.
A close review of the testimony and a consideration of the documents in evidence lead us to conclude that Mrs. Whitt was not at fault and is entitled to permanent alimony.
Practically everything Mr. Whitt said was contradicted by Mrs. Whitt, and vice versa.
Of the other witnesses, just oneMrs. Locassiowas of real value. Mr. Conrad associated with Mr. Whitt only during working hours, and his testimony helped establish the fact that the Whitts had lived separate and apart for more than two years, an issue not in dispute.
The Whitts separated on the night of December 27, 1967. Mrs. Whitt said that Mr. Whitt came home intoxicated and that he orally abused and then physically assaulted her with his fist, chasing her from the matrimonial domicile. Mr. Whitt said this wasn't so.
However, we were impressed by Mrs. Locassio's testimony, which substantiated Mrs. Whitt's version of the December 27th happening. Mrs. Locassio was an eye witness to this incident.
It is true that Mrs. Locassio is Mrs. Whitt's child of her first marriage, but Mrs. Whitt married Mr. Whitt when Charlene was only two years old. Mrs. Locassio, now 28 years of age, referred to Mr. Whitt as "father" and said,
"I have known no other father."
*237 On the night of the separation, Mr. Whitt admitted drinking "about four or five" beers in the Mirabeau Bar before going home. He denied that he was in a state of intoxication, but his actions indicate otherwise.
Mr. Whitt also denied that he drank during working hours.
From the record:
Q. (to Mr. Whitt)Did you have any problems on your job with drinking?
A. No, sir.
Q. Did you ever have to be reprimanded for drinking on the job?
A. I don't drink on the job so I have no reason to be reprimanded.
In evidence is a letter from Mr. Whitt's employer, who is the State Custodian of Voting Machines, Douglas Fowler.
In part, the letter reads:
Dear Mr. Whitt:
"You are supposed to be a leader among your men and build moral. You have recently become the champion habitual bitcher and have tried to destroy all of the moral and good relationship that exists between the writer and the other men under you.
"You have been dealt with fairly in every way and and by this letter I am authorizing your immediate supervisor, Mr. William P. Hines, to take whatever action that he deems necessary in getting you straightened out.
"I am absolutely not going to tolerate any longer, your drinking on the job, your tearing down the moral of the men under you and your keeping up the constant bombardment of wild talk and telephone conversations such as you have done recently. If you think that we cannot run this department without your services, then you had better back up and re-examine your position."
This document speaks for itself.
Mr. Whitt's major complaint, as aforesaid, was that Mrs. Whitt refused to sleep with him.
Mrs. Whitt was asked about this:
Q. Your husband said that since 1954 you have denied him sex. Is that true or false?
A. That's the biggest story he could have told.
Later, she testified:
"I had a normal sex life until these last few years that Whitt became maniac."
Mrs. Whitt is 55 years of age and unemployed, and to deny her alimony would require, it seems to us, more than Mr. Whitt's totally uncorroborated testimony.
To constitute fault, the wife's misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation rather than a justifiable or natural response to initial fault on the part of the husband. See Adler v. Adler, La.App., 239 So.2d 494.
Where the husband's fault provokes the wife into terminating the marital relationship, she is considered to be herself free from fault for the purposes of awarding alimony. See Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707.
Concluding, we believe that Mrs. Whitt had sufficient legal provocation to flee from her home on December 27, 1967, and that she should receive permanent alimony of ONE HUNDRED SEVENTY FIVE AND NO/100 ($175.00) DOLLARS per month.
Further, the record discloses ample evidence of Mr. Whitt's excessive drinking over a period of several years.
*238 Accordingly, the Judgment of the Trial Court denying permanent alimony is reversed and set aside.
It is ordered, adjudged and decreed that
Alton D. Whitt pay permanent alimony to his wife, Estelle Mae Vauthier, in the amount of ONE HUNDRED SEVENTY-FIVE AND NO/100 ($175.00) DOLLARS per month commencing on November 13, 1972 (Judgment of Divorce.)
Reversed.