316 So.2d 202 (1975)
Alton D. WHITT
v.
Estelle Mae VAUTHIER, his wife.
No. 6845.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1975.
Rehearing Denied August 6, 1975.
Writ Refused October 17, 1975.
*203 Reed, Reed & D'Antonio, Floyd J. Reed, Metairie, for plaintiff-appellant.
Morphy, Holbrook & Faulkner, Steven K. Faulkner, Jr., New Orleans, for defendant-appellee.
William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, First Asst. Atty. Gen., Stephen J. Caire, Metairie, for State Attorney General's Office.
Before REDMANN, GULOTTA, STOULIG, SCHOTT and MORIAL, JJ.
SCHOTT, Judge.
This case is a sequel of Whitt v. Vauthier, 295 So.2d 235 (La.App. 4th Cir. 1974), writ refused La., 299 So.2d 793. There the wife successfully appealed from a judgment finding her at fault and thus not entitled to alimony under LSA-C.C. Art. 160. In reversing, this Court rendered a judgment in favor of the divorced wife for alimony in the amount of $175 per month commencing November 13, 1972, the date of the divorce judgment. Our original opinion was handed down on February 7, 1974, and rehearing was denied on June 18, 1974. Following the refusal of the writ by the Supreme Court on September 13, 1974, the husband filed a motion to terminate alimony on the grounds that, while the case was pending on appeal the wife had obtained gainful employment which would have precluded her recovery of alimony, and that C.C. Art. 160 is unconstitutional because only a divorced husband is obliged to pay alimony under the article, thereby arbitrarily discriminating against male spouses, and thus depriving the husband of due process and equal protection of the law.
A counter motion was filed by the divorced wife seeking to make past due alimony executory in the amount of $4,025 based upon $175 per month from November 13, 1972, through September 13, 1974.
The trial judge rejected the husband's contention that C.C. Art. 160 is unconstitutional. Based upon evidence which showed that the divorced wife had become employed as a real estate salesman in March, 1973, and derived some income from this employment since that date, the trial judge retroactively reduced her alimony beginning January 13, 1974, to the sum of $110 per month. He made alimony executory in the amount of $175 per month from November 13, 1972, through December 13, 1973, thereby arriving at a total sum of $3,550. From this judgment the husband has appealed, urging the unconstitutionality of the article and the wife has answered the appeal, seeking an increase in the *204 amount of executory alimony to the sum of $4,135.[1]
With respect to the divorced husband's attack on the constitutionality of the statute, we have the benefit of a recent decision in Murphy v. Murphy, 232 Ga. 352, 206 S.E.2d 458 (1974), certiorari denied by the United States Supreme Court, 421 U.S. 929, 95 S.Ct. 1656, 44 L.Ed.2d 87. The reliance of the husband on Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) and Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1972), is the same as that placed on these cases by the appellee in the Murphy case. We agree with the rationale of the Georgia Supreme Court in analogizing the issue here to that disposed of by the Supreme Court of the United States in Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L. Ed.2d 189 (1974), in which a Florida statute giving widows a $500 exemption from property taxation was held to be constitutional even though the same benefit was not conferred on widowers. Likewise, we find the instant case distinguishable from Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514, 73-1892 on the docket of the Supreme Court of the United States which struck down 42 U.S.C. § 402(g) of the Social Security Act as unconstitutional. Aside from the fact that the Supreme Court's denial of a writ in the Murphy case came after their opinion in the Weinberger case, indicating that the high Court recognizes a distinction, we find that the special provisions afforded to divorced wives by C.C. Art. 160 can be justified or rationalized as were the special provisions for the homestead exemption in Florida in Kahn v. Shevin, supra, although these considerations were not applicable to Weinberger as they were not to Frontiero. We therefore conclude that C.C. Art. 160 is not inconsistent with the Constitution of the United States as most recently interpreted by the Supreme Court of the United States.
Although the issue was not specifically raised by the husband we have also considered whether C.C. Art. 160 is consistent with Art. 1 § 3 of the Louisiana Constitution of 1974, which provides as follows:
"No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations."
The pertinent part of Art. 160 provides as follows:
"When the wife has not been at fault, and she has not sufficient means for her support, the court may allow her, out of the property and earnings of the husband, alimony which shall not exceed one-third of his income when: . . ."
We note at the outset that the instant case raises the constitutional validity of this statute from an oblique point of view. We have here a needy wife who therefore qualifies for alimony under the article, a husband who has the "property and earnings" out of which alimony can be paid, and he complains that the statute is unconstitutional because it places an obligation upon male spouses but no express like obligation upon female spouses. It seems that the question would be more effectively and reasonably directed if this were a case where a husband had shown that he had not sufficient means for his support and was seeking alimony from the property and earnings of a wife. In the passage of Art. 160 the legislature recognizes an obligation to remedy need in the historically typical case of the wife who has not sufficient means for her support, and its only short-coming may be in its failure to recognize a similar obligation to the need of a husband. Thus, we may have a discrimination by *205 omission, but this discrimination would not seem to mandate a declaration of unconstitutionality as to the remedy afforded to the needy wife, even if such were arbitrary, capricious or unreasonable. However, we have resolved that the divorced husband's attack on the constitutionality of the article is without merit for another reason.
His argument is based on the theory that the existence of Art. 160 causes discrimination against needy husbands in that there is no remedy available to them as is provided to needy wives by the article. The weakness of the argument is that it begs the question whether there is a similar remedy available to needy husbands in the first instance. We do not find this to be the case. In reviewing the history of Art. 160, we find that it made its appearance in the Civil Code of 1870 after being omitted from the Codes of 1808 and 1825. By an act of the Legislature in 1827 the article in substantially the same form as it now exists was adopted along with provisions for the grounds for divorce found in Art. 139 and other divorce related articles. The Act of 1827 was substantially re-enacted by Act 307 of 1855 and then was made a part of the 1870 Code. On the other hand, Art. 301 of the Code Napoleon of 1804 in effect provided Art. 160 type alimony for either spouse who was in need after divorce, and when the Civil Code of 1808 was adopted this provision was omitted along with other Code Napoleon divorce related articles. In his discussion of the historical, political and legal background of the codification of the law in the Civil Codes of Louisiana, Professor A. N. Yiannopoulos in "Louisiana Civil Law System" states that the Civil Code of 1808 did not repeal all prior laws but only those which were "contrary to the dispositions" or "irreconcilable with them." Cited is Cottin v. Cottin, 5 Mart. (O.S.) 93 (La.1817) in which it was held that the ancient laws "must be considered as untouched, whether the alterations and amendments, introduced in the digest, do not reach them." When the Code of 1825 was adopted it was intended that it be "an all inclusive piece of legislation, intended to break definitively with the past," but in Flower v. Griffith, 6 Mart. (N.S.) 89 (La. 1827) it was held that the provisions of the old Code continued to be in force unless expressly modified, suppressed or superseded by the new provision.
When the Legislature saw fit to provide for divorce in 1827 and for the remedy to the needy divorced wife it was responding to conditions and customs which prevailed at that time. It seems to us that there was no intention on the part of the Legislature to foreclose against needy husbands by the passage of that act, but in that day and time the problem of the needy husband was simply not envisaged by the Legislature. The relative positions of men and women in that society were such that the case of the needy husband seeking alimony from his wife was so rare, and perhaps would have been so bizarre, that the Legislature did not provide a statutory remedy for that situation. Conditions were much the same in 1855 when the Act of 1827 was re-enacted, and in 1870 when the present Civil Code was adopted. Thus, we know that alimony for the divorced husband was once available by virtue of a positive statute in the Code Napoleon, we know that the Legislature has by positive enactment provided for alimony for divorced wives, there has never been a positive legislative statement to the effect that divorced husbands cannot claim alimony, and in our research of the jurisprudence we find no case where the husband has been denied or has even applied for alimony after a divorce. We have concluded therefore that the courts may, in the appropriate case and consistent with sound Civilian principles award alimony to a divorced husband, and therefore the existence of Art. 160 which codifies the right of the divorced wife in this connection is not unconstitutional because it neglects to codify a similar right to divorced husbands. Not only do we reject the assumption that divorced husbands do not have a similar remedy but we find support for the *206 proposition that they do. Accordingly, we find no basis to declare Art. 160 unconstitutional.
There is merit to the wife's answer to the appeal. This case came to the trial court on a rule to make past due alimony executory pursuant to LSA-C.C.P. Art. 3945. That article in prescribing that after trial of the motion "The Court shall render judgment for the amount of past due alimony" does not leave any discretion with the Court as to whether or not a judgment is to be given once there is proof that payments are in arrears. Allen v. Allen, 136 So.2d 168 (La.App. 4th Cir. 1962). Perhaps the best recent discussion of the procedural device sought to be implemented by the wife, in this case, is found in Simon v. Calvert, 289 So.2d 567 (La.App. 3rd Cir. 1975):
"The only remedy available to a father to relieve himself of the obligation of paying child support imposed by a judgment is by proceeding to have the judgment amended, suspended or terminated. Sampognaro v. Sampognaro, 222 La. 597, 63 So.2d 11 (1953); Rodriguez v. Rodriguez, 245 So.2d 765 (La.App. 4 Cir. 1971); Hebert v. Hebert, 159 So.2d 537 (La.App. 3 Cir. 1964). Courts cannot consider equity for the purpose of nullifying or reducing accumulated alimony, which is a vested property right, until the judgment is altered or amended by subsequent judgment or is terminated by operation of law. LSA-C.C.P. art. 3945; Pisciotto v. Crucia, 224 La. 862, 71 So.2d 226 (1954); Elchinger v. Elchinger, 181 So.2d 297 (La.App. 4 Cir. 1965). Courts have also disallowed attempts at reduction of past due alimony and child support instigated by judgment debtors based on their inability to pay. Snow v. Snow, 188 La. 660, 177 So. 793 (1937); Williams v. Williams, 211 La. 939, 31 So.2d 170 (1947). This further demonstrates the courts' reluctance to allow equity to interfere with collection of past due support payments pursuant to enforceable final judgments."
Notwithstanding the principle announced above to the effect that equity cannot be considered for the purpose of reducing accumulated alimony in oral arguments appellant has urged that we exercise our power to grant equitable relief pursuant to C.C.P. Art. 2164 and provide the husband with some relief as the trial judge attempted to do. The husband's position is that he had won his case in the trial court in November, 1972, and had no reason to be concerned about the wife's being gainfully employed until the opinion of this Court was handed down in the last case between these parties in February, 1974, when for the first time the husband was cast in judgment for alimony in favor of his divorced wife. He argues that his motion to terminate alimony was timely, coming within a month after the Supreme Court refused the writ which he sought to reverse our opinion in that last case. While we sympathize with this position, we cannot approve of the trial judge's reduction of alimony from $175 to $110, effective January 13, 1974. This, in effect, changed a final judgment of this Court given tacit approval by the Supreme Court and took away from the divorced wife a property right in the form of a judgment for alimony in the amount of $175 per month. The trial court's action cannot be reconciled with the authorities cited in Simon v. Calvert, supra.
We think it significant that although the opinion in the last case between these parties was handed down in February, 1974, a rehearing was not denied until June, 1974. Nothing precluded the husband from then bringing to this Court's attention the fact that his former wife was employed during that period and had he done so this Court may have remanded the case to the trial court for the taking of evidence and an appropriate award based on the circumstances then prevailing. Instead, our judgment *207 became final and was thereafter immune to any amendment by the trial court. Accordingly, that portion of the judgment which made past due alimony executory in the amount of $3,550 for the period from November 13, 1972, through October 13, 1974, as amended so the past due alimony for that period is made executory in the amount of $4,135, based upon 23 months at $175 and $110 payable on October 13, 1974.
No appeal has been taken from the trial judge's award of $110 per month beginning October 13, 1974, and that portion of the judgment will not be disturbed.
Accordingly, the judgment appealed from is affirmed insofar as the Constitutional objection to LSA-C.C. Art. 160 by Alton D. Whitt was rejected, and insofar as alimony was payable to Estelle Mae Vauthier, divorced wife of Alton D. Whitt, by him was reduced to $110 per month, beginning October 13, 1974. But the judgment in favor of Estelle Mae Vauthier and against Alton D. Whitt in the sum of $3,550 for alimony in arrears is amended, so that there is judgment in her favor and against Alton D. Whitt in the amount of $4,135.
Amended and affirmed.
REDMANN, J., dissents in part with written reasons.
GULOTTA, J., dissents with reasons to follow.
STOULIG, J., concurs in result with written reasons.
REDMANN, Judge (dissenting in part).
I subscribe to that part of the majority opinion which, with clear reasoning, recognizes the impermissible discrimination of a law which would oblige the able exspouse to assist the needy ex-spouse, only if the able spouse were of the male sex. I also endorse the reasoning that Louisiana law does not thus discriminate against male ex-spouses.
But the judgment appealed from should be reversed insofar as it awards as "arrearage" in alimony any sum for periods prior to the date of our first judgment, February 7, 1974. No executory judgment is possible, C.C.P. art. 3945, except when "payment of alimony under a judgment is in arrears" (emphasis added)a circumstance that could not occur, in this case, until after February 7, 1974. "When the [Civil] Code [art. 3538] mentions arrearages of alimony, it undoubtedly has reference to an amount becoming due after the alimony has been fixed by the court." Miller v. Miller, 1944, 207 La. 43, 20 So.2d 419, 421. (See also Dubourg v. Dubourg, La.App.1974, 291 So.2d 441, where we rejected a wife's argument that permanent alimony is due from judicial demand rather than from date of judgment).[1]
On the other hand, after February 7, 1974 the husband did know he was cast for alimony (though our judgment was not yet definitive). If the wife was working or if other circumstances justified a reduction in alimony, he might reasonably have filed at that time a rule for reduction in the trial court; Rakosky v. Rakosky, La.App.1973, 275 So.2d 421, writ refused La., 278 So.2d 508. But prior to February 7, 1974even if the view is erroneous that no prejudgment arrearage can occurcertainly the husband who had a judgment holding him not liable for alimony at all could not reasonably have been expected to file a rule for reduction from zero when the wife began to work.
*208 The job of judges is to do justice between litigants, to declare which has right on his side, and to provide any remedy that is due. Judges become sensitive to rights, to justice, because it is precisely their task to find right. Perhaps the peak of judicial right-finding is finding a constitutional right which invalidates even a "law" of the Legislature.
A curious anomaly it is, therefore, that right-sensitive judges can at times be insensitive to the wrong that they themselves do by their own "law". The horrifying example is the judge-made "law" that constitutional rights cannot be argued in an appellate court unless they were argued in the trial court: this judge-made "law" becomes the highest law of the land, and reduces the Constitution to second-class law.
A similar self-sanctification of judge-made "law" is present here. Judges earlier ordained that past-due alimony payments cannot be reduced retroactively (they are "vested") no matter how dire the circumstances. This court nevertheless blithely imposed alimony retroactively on the first appeal here, and now we create for the first time a rule that refuses retroactive reduction of retroactive alimony. This new judge-made "law" relegates common fairness to a second-class principle in our system. It is little consolation that our entire Constitution is similarly second-rate law according to some judicial theorists.
STOULIG, Judge (concurring).
I concur in the result.
The judgment of this court awarding the wife alimony of $175 per month became final and dispositive of the issue upon the refusal of the Supreme Court to grant writs. Thereafter, the unpaid alimony accruing under this judgment became a vested property right and was not subject to a retrospective modification by a subsequent judgment of the trial court. LSA-C.C.P. art. 3945.
As stated in the case of Rodriguez v. Rodriguez, 245 So.2d 765 (La.App. 4th Cir. 1971), the only remedy available to Mr. Whitt to modify the award of alimony to his divorced wife is by way of a rule seeking to reduce, suspend, or terminate, the effect of which cannot predate its filing. The retroactive limitation of the effect of any judgment adversely affecting an award of alimony to the date of the filing of the rule for this purpose is necessary in order to preserve the vested property right character of accrued unpaid alimony.
GULOTTA, Judge (dissenting).
I have no quarrel with the rationale employed by the majority in reaching a conclusion that LSA-R.C.C. art. 160 is not unconstitutional. I do question, however, whether the instant case is the proper vehicle for a consideration of that question. The constitutional question of a husband's right to claim alimony is properly raised in a case where the husband seeks alimony and is denied relief. It is not properly raised in a case (as in the instant one) where the wife is seeking alimony. Accordingly, I am of the opinion that the constitutional question is not properly before us and not properly passed on.
I disagree with the result reached by the majority which amends and increases the amount of the accumulated alimony. The trial judge properly retroactively reduced the alimony payments from $175.00 to $110.00 per month effective January 13, 1974.
The majority finds fault with the trial court's granting of a reduction in alimony from January, 1974 to October 13, 1974 when the rule to reduce was filed. The effect of the majority opinion is to place *209 the responsibility upon the husband to seek a reduction of the alimony decree of the Court of Appeal (rendered February 7, 1974, La.App., 295 So.2d 235, rehearing denied, June 18, 1974, writs refused, September 13, 1974, La., 299 So.2d 793) when the judgment had not become final until such time as the writs were denied by the Supreme Court. See LSA-C.C.P. art. 2167. Prior to rendition of our decree, the husband was under no order to pay alimony. On October 13, 1974, a rule for reduction was filed within a relatively short period of time from the date the Supreme Court denied writs. A rule for reduction filed prior to the finality of the decree (September, 1974) would have been met with an exception of prematurity.
Accordingly, I dissent from that part of the decree which denies a reduction in alimony payments from January of 1974 to October, 1974. I would affirm the judgment of the trial court.
NOTES
[1] This figure is based on $175 per month from November 13, 1972, through September 13, 1974, and $110 for October 13, 1974. The husband's rule was filed on October 7, 1974, and trial was held on October 15.
[1] Although Falcon v. Falcon, 1955, 228 La. 280, 82 So.2d 10, 11, awarded a permanent alimony increase retroactively to judicial demand (including an increase in the nevercontested temporary alimony), it did so because the husband "admitted liability in the amount sued for. Therefore we have no alternative. . . ."