355 So.2d 1057 (1978)
Barbara Lee Wollman, wife of Binks Arthur GRAVAL
v.
Binks Arthur GRAVAL.
No. 8833.
Court of Appeal of Louisiana, Fourth Circuit.
February 14, 1978.
*1058 Nel F. Vezina, Gretna, for defendant-appellant.
Reed, Reed & D'Antonio, Floyd J. Reed, Metairie, for plaintiff-appellee.
Before LEMMON, STOULIG, and GARSAUD, JJ.
GARSAUD, Judge.
This case is a procedural labyrinth designed to test the patience of the most long-suffering trial judge. An attempt will first be made to unravel the maze, as the myriad of rules filed becomes important in our substantive decision.
On March 28, 1974, a judgment was rendered for separation from bed and board in favor of Mrs. Binks Arthur Graval, herein the appellee, against her then-husband Binks Arthur Graval, herein the appellant. The judgment awarded $500 a month alimony pendente lite and $500 a month child support for one child, Kelly. On August 19, 1975 a rule was issued, directing Binks Arthur Graval to show cause why he should not be adjudged in contempt for failure to pay alimony, and why said judgment should not be rendered against him and immediately made executory for the sum of $5,000 for past-due alimony pendente lite. On August *1059 22, 1975 the $5,000 past-due alimony was made executory to be paid within a year, defendant was held in contempt, and the Court ordered him to pay $300 a month child support and $200 a month alimony.
On October 23, 1975 another rule was filed by Mrs. Graval for contempt and to make past-due alimony executory, this time in the amount of $1,500, including a part for child support. On November 18, 1975 a judgment was rendered in the district court, decreeing that the defendant be held in contempt for failing to pay alimony, and further decreeing that the defendant shall have the right to purge himself of his contempt by paying the plaintiff the sum of $5,000, within one year from the date of the hearing, in no event later than August 22, 1976.
On November 17, 1975, the day before the above judgment, a rule for decrease in alimony was filed by Mr. Graval. The basis of this rule was the plaintiff's lack of need and the defendant's inability to pay. This rule was set for hearing on November 21, 1975. Subsequent thereto, a motion for continuance on the part of Mrs. Graval as a result of a change in legal counsel was granted to Friday, December 5, 1975. This rule was continued to December 17, 1975, then to December 18, 1975, and finally on December 18th was continued without date, and again on December 21, 1975 it was ordered to be continued without date.
On November 23, 1976, nearly a year later, another rule for contempt was filed against Mr. Graval, alleging that he was now in arrears in the total amount of $9,600, and requesting that the amount be made executory.
On November 29, 1976, a final judgment of divorce was granted, which gave the wife the permanent custody of the minor child, and further ordered the defendant to pay child support in the amount of $300 a month and permanent alimony in the amount of $200 a month. On December 7, 1976, Mr. Graval filed another rule to decrease alimony, alleging a drastic change in the financial situations of the defendant and the plaintiff. On December 13, 1976, a hearing was finally held on the contempt rule brought by Mrs. Graval for alimony in arrears, as well as the rule to reduce filed by Mr. Graval.
On January 7, 1977, the trial court rendered a judgment dismissing the rule to reduce which had been filed by Mr. Graval. It is also assumed that this dismissal included the dismissal of the rule which had been continued without date previously filed in 1975, although no specific mention is made of this. However, it is reasonable to conclude that this was the disposition of that rule, as there is no other evidence that it had ever been heard. The trial judge commented at this time that he dismissed the rule as a result of the arrearages, and as soon as Mr. Graval was current, he would be entitled to file a new motion to reduce. In this January judgment, the Court found that the balance in arrearages from prior judgments was $3,955. He specifically stated it was in addition to the $5,000 which previously had been made executory. He further found Mr. Graval in contempt of court, and sentenced him to Parish Prison for 90 days, suspending the sentence and placing Mr. Graval on probation for one year. The condition of his probation was that he make a payment of $50 per week on the $3,955 judgment until the matter was satisfied. This $50 was in addition to the $300 monthly for child support and $200 monthly for alimony.
On January 12, 1977 Mr. Graval filed a new rule to terminate alimony, alleging that Mrs. Graval had obtained employment on or about September 1, 1976. This rule was continued to February 18, 1977, at which time a further continuance was requested by Mrs. Graval as a result of her obtaining new legal counsel. On March 2, 1977, Mrs. Graval then filed a rule to increase child support, to make past-due alimony and child support executory, and for contempt of court. On March 14, 1977 Mr. Graval filed a rule to change custody, terminate and/or reduce child support, and a rule for contempt and specific visitation. These rules were all heard together on March 19, 1977. The procedural nightmare *1060 was continued when the new attorney for the appellee indicated that his rule for contempt and to make past-due alimony executory was superfluous, as he had learned of the January 7, 1977 judgment in this regard only the day before the March 19, 1977 hearing. Thus, this issue was not argued on March 19, 1977. The trial judge directed counsel then to prepare a judgment for his signature based on the judgment rendered in open court on January 7, 1977.
On April 5, 1977, the judgment of January 7, 1977 was signed by the trial court. Further, on April 5, 1977 a judgment was rendered on the three rules heard on March 19, 1977, but that judgment was not signed until April 6, 1977. In this latter judgment, the Court ordered that the alimony be terminated, that the rule to increase child support be made absolute, and condemned Binks Graval to pay $500 a month child support. It further decreed that the rule to make past-due child support executory and for contempt of court be dismissed, and finally ordered that the rule to terminate or reduce child support and to change custody be dismissed.
The resulting chaos spilled over into the appellate process when, in his motion for appeal, appellant specifically stated that he desired to appeal devolutively from the final judgment rendered on the 5th day of April, 1977 and signed on the 6th day of April, 1977. Further, in his appeal bond, he repeats the specific dates alluded to. An appeal bond of $300 was set in the matter. In his brief, and before this Court in oral argument, counsel for appellant indicates that he intended to appeal the judgment rendered January 7, 1977 but not signed till April 5, 1977, and he thought in fact he had done so by his motion for appeal. In his brief, the appellee recognizes the difficulty and argues simply that the matters in the January judgment are not before this Court on appeal. The appellee's brief does not consider in the alternative the issues raised by the judgment of January 7, 1977. When inclined to permit the appeal on both judgments, this Court, through the Clerk's office, invited an additional brief from attorney for appellee.
The appellant argues the following issues on appeal:
(1) Whether the court's termination of alimony should have been retroactive to the date of filing of the rule;
(2) Whether the wife is entitled to alimony after she becomes a full-time employee with sufficient funds for her maintenance, and where the husband has not sufficient funds to pay the same;
(3) Whether the imposition of a 90-day sentence in Parish Prison for contempt was an abuse of judicial discretion. (The argument is that the alimony payments were paid to the parents of the wife and not directly to the wife, but in his decision of January 7, 1977 the trial Court stated that he could get no credit for these payments as the Court ordered him to pay the alimony and child support to the wife and no one else);
(4) Whether the wife should be entitled to custody when the child is not living with her;
(5) Whether the payment of $500 monthly in child support is excessive.
The first issue which must be resolved is whether the appellant properly appealed from the judgment rendered on January 7, 1977. To reiterate, the judgment of January 7, 1977 made absolute the rule to make past-due alimony and child support executory, and rendered a judgment in this regard in favor of plaintiff in the sum of $3,955. Further, it made absolute the rule for contempt against Binks Graval, and ordered him sentenced to 90 days in Parish Prison, which sentence was suspended, and defendant placed on probation, a condition of which was the payment of $50 per week to be applied toward the retirement of the executory judgment rendered therein.
The question of whether the appeal is proper poses a vexing question for this Court. It is easily understood how counsel for appellant could consider that his motion for appeal covered all issues, as the prior skirmishes (and unfortunately we can find no better description) in this matter could *1061 lead one to total confusion. Be that as it may, it is our view that this matter is governed by Loyacano v. Loyacano, 311 So.2d 910 (La.App. 4th Cir. 1975), writ refused 313 So.2d 847 (La.1975), where two judgments were so interrelated, one of June 7th and one of July 26th, that an appeal taken from the judgment entered on "the 26th day of July" was considered also an appeal from the June 7th judgment. In that case, neither judgment had become definitive. Here we have simply a continuum of rules arising in the same context, and all very much interrelated. Also, neither judgment had become definitive when the motion for appeal was filed. The appeal filed by the appellant, therefore, was sufficient to include the judgment rendered on January 7, 1977 and signed on April 5th as well as the judgment rendered on April 5th and signed on April 6th, 1977.
This, then, leads us to consider the merit of the error assigned regarding the judgment of January 7, 1977. With respect to this judgment the appellant contends that it was an abuse of judicial discretion to sentence the defendant to 90 days in Parish Prison, in view of the fact that some child support payments were paid to the grandparents, who had physical custody of the children. It is the defendant's position that, as a result of these payments to the grandparents, the defendant did not deliberately refuse to perform an act which was yet within his power, as required under R.S. 13:4611(A), dealing with punishment for contempt of court.
With respect to the amounts paid to the grandparents, which the record indicates were rather minimal, we believe that the trial court was correct in refusing to grant credit for such payments. The obligation of the father is to pay the child support to the mother who has legal custody of the child. He complies with this obligation only when the payments are made to the mother. Rodriguez v. Rodriguez, 245 So.2d 765 (La.App. 4th Cir. 1971); Simon v. Calvert, 289 So.2d 567 (La.App. 3rd Cir. 1974); see also, Pascal in Symposium: The Work of the Louisiana Supreme Court for the 1951-1952 Term (1953), 13 La.L.Rev. 230 at 258, wherein the author says, "Actually, alimony for the wife should be made payable to her in her own name, but alimony for the child should be made payable to the wife who has its custody and in her capacity as tutrix. Only the tutor may receive funds owing to the child." Also, Pascal, in Symposium: The Work of the Louisiana Supreme Court for the 1949-1950 Term (1951), 11 La.L.Rev. 141 at 174, "It may be pointed out (the practice notwithstanding) that nothing in Louisiana legislation authorizes the payment of alimony for a child to anyone but its legal representative. During marriage and before separation from bed and board, the father would be the representative. After the death of a parent, separation, or divorce, the tutor would be the representative." See also, Odum v. Odum, 273 So.2d 576 (La.App. 1st Cir. 1973). It was not an abuse of discretion, therefore, for the trial court to exercise its contempt power and to impose a 90-day sentence on the defendant. We affirm the trial court in its judgment of January 7, 1977.
Insofar as the second judgment is concerned, the issues to be resolved are (1) whether the termination of alimony, which was given no retroactive effect, should have been given some retroactive effect by the trial court; (2) whether the child support should be increased to $500; and (3) whether custody should remain with the mother.
Addressing the first issue, there are five possible alternatives: (a) to make the termination of alimony retroactive to when the first rule to decrease was filed in 1975; (b) to make it retroactive to the time Mrs. Graval obtained employment; (c) to make it retroactive to the rule to decrease filed in December 1976; (d) to make it retroactive to the day the rule to terminate was filed on January 12, 1977; (e) to make it effective as of the date of judgment, as did the trial court.
No doubt when a rule for reduction or termination of alimony is made absolute, the decrease or termination may be made retroactive to the date the rule was filed. *1062 Vinson v. Vinson, 292 So.2d 763 (La.App. 4th Cir. 1974). Of course, this assumes that the rule which was made absolute was the rule to the date of which the reduction was made retroactive. Accordingly, in this instance, as the rule of December 1975 and the rule of December 1976 were dismissed, the only rule to which the reduction can be related and made retroactive is the rule filed January 12, 1977.[1]
However, the appellant strenuously argues that fairness would demand that the termination of alimony be made retroactive, to March 1976, when the appellee obtained employment. The record is clear that in March 1976, the appellee became a temporary full-time teacher in the Jefferson Parish school system, earning approximately $1,068 a month in gross figures. It is also clear that in September 1976 she became a permanent full-time employee of the Jefferson Parish school system at the same level of earnings. The record sustains the allegation that the appellee hid this fact of employment from her former husband, and did not advise him of the same until some time toward the end of 1976. The appellant testified that after the wife had brought this fact to his attention, they discussed it for a couple of months with a view toward her voluntarily terminating or reducing alimony payments. However, this apparently did not succeed, and she filed one of the rules for contempt. In December 1976, he then filed for a reduction on the basis of her employment.
The trial court in terminating the alimony clearly concluded that the wife did not require any further moneys, as she had sufficient means for her support as the result of her job. The issue, then, is whether by concealing this fact from her husband, the husband should be granted credit now for the amount paid from the time the wife did have sufficient means for her maintenance.
Under normal circumstances, once alimony payments accrue they become a property right which may not be divested. Regardless of the equity which may be involved in reducing or forgiving past-due alimony, such a vested right cannot be disturbed. Relief lies in application to the court for a modification of the judgment. C.C.P. Art. 3945; Pisciotto v. Crucia, 224 La. 862, 71 So.2d 226 (1954); Simon v. Calvert, 289 So.2d 567 (La.App. 3rd Cir. 1974); Whitt v. Vauthier, 316 So.2d 202 (La.App. 4th Cir. 1975). In none of these cases, however, did the party who was the recipient of the alimony act to defraud the former spouse by concealing an essential fact relative to the spouse's need for alimony, i. e., full-time employment. The Court will not reward Mrs. Graval for concealing from her former husband a pertinent fact which relates to his obligation to her to pay alimony after divorce. As a matter of law, as of March 1976, the wife had sufficient means for her maintenance as a result of her fulltime employment. Alimony may have accrued from that date as a matter of fact, but not as a matter of law. Further, only legitimate rights vest. Even those which are subject to divestment in other jurisdictions are not ab initio illegitimate. Accordingly, it is our view that fairness and justice require that the alimony be terminated as of March 1976. In this regard, then, the trial court's decision is reversed.
The next issue to be resolved is whether the $500 awarded for child support is excessive.
There can be no equivocation about the obligation imposed by Article 227 of the Civil Code. Parents share the obligation of supporting, maintaining, and educating their children. The degree of support is determined by the need of the child and the ability of "those who are to pay it." C.C. Art. 231; Ducote v. Ducote, 339 So.2d 835 (La.1976).
As appellee argues in her brief,

*1063 "The duties of preparing meals, washing clothes, providing transportation, furnishing care and guidance, and performing all the day-to-day services that are demanded of a mother contribute substantially to the mutual obligation of support." Ducote v. Ducote, supra, at 839.
This is true, of course, when the mother has chosen to remain at home and the circumstances justify this decision, as in Ducote, where the two young daughters needed the attention of their mother.
Here we have a wholly different proposition. Both parents are gainfully employed and must discharge their obligation in whole or in part by financial contributions for the benefit of the child. The mother provides very little, if any, of the services referred to in Ducote for her son. This mutual obligation, then, must be apportioned in each case as indicated by the parents' respective abilities to support the needs of the child.
The record in this regard is unenlightening, particularly regarding the child's needs. It is clear that the child resides with the grandparents from Sunday evening to Friday evening. Weekends are spent partly with the mother and partly with the father. There is absolutely no evidence clearly supporting the amount of expenses for the child which are incurred by the grandparents.
There are allegations in the record, supported by self-serving documents, purporting to establish the following:

 Monthly
 1. Husbandgross income $ 911.00
 2. Husbandexpenses, not
 including child support 1,553.00
 3. Mother's gross income from
 job (mother may have some
 additional income) 1,068.00
 4. Mother's and child's expenses
 (not apportioned
 between the two) 2,313.00
 5. Mother pays grandparents
 for rental of house and/or
 for child (this amount varies
 a few dollars month-tomonth)
 225.00

On the basis of this evidence, we believe it was manifestly erroneous for the trial court to increase child support from $300 to $500. Apparently the trial court believed that by terminating the $200 alimony, the ability of the husband to pay was increased by $200. That is granted; however, no scintilla of evidence supports any increase in the need of the child. The increase in child support under these circumstances was not justified. We must, therefore, reverse the trial court on this issue and order a reduction to $300 for child support.
Finally, with respect to the denial of a change in custody Mr. Graval complains that plaintiff, although legal custodian, does not have actual custody of the child. As previously indicated, the testimony showed that the child spends most of every week at the home of his maternal grandparents. According to Mrs. Graval, the child stays with her parents during the week for school, financial, and social reasons, and because she works full-time.
The principles which control when considering a change of custody are those set forth in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), as follows:
"(1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children.
"(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father.
"(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present *1064 custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed.
"(4) Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interest of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof." (Citations omitted.)
This case appears to be similar in many ways to the factual situation presented in Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958), where custody of a 15month-old child was granted to the mother, who kept the child at the home of her parents in Mansura. Soon thereafter the mother mother moved from Mansura to New Orleans to attend a business college. The court determined that this was not a question of deciding custody between the father and maternal grandparents, because the mother had not relinquished custody of the child to her parents. The child was merely temporarily left in the care of its maternal grandparents while its mother attended school to become self-supporting. In these circumstances, the Supreme Court refused to change custody to the father.
Applying the Fulco principles to the present case, we are unable to find that the trial judge erred in continuing custody with the mother, Mrs. Graval. There is no real showing that the child is not wellcared-for in a moral and suitable environment under the present circumstances. The father's claim that he would provide a more conducive environment for the best interests of his son is pure speculation, to say nothing of the cost of furnishing the lifestyle he suggests. For these reasons, we affirm that part of the trial court's opinion.
AFFIRMED IN PART.
REVERSED IN PART.
NOTES
[1] We do not intend, by this statement, to approve the dismissal of the rules to reduce, on the basis that the husband was not entitled to relief on these rules until the arrearages were paid. However, because of the result we reach, we need not discuss the propriety of the dismissal of these rules.