405 So.2d 594 (1981)
James D. DAVIS, Plaintiff-Defendant In Rule-Appellee,
v.
Jane Thompson DAVIS, Defendant-Plaintiff In Rule-Appellant.
No. 8367.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1981.
Rehearing Denied November 20, 1981.
*595 John G. Williams, Natchitoches, for plaintiff-appellant.
Davis & Murchison, James D. Davis and H. Dillon Murchison, Alexandria, for defendant-appellee.
Before GUIDRY, FORET and SWIFT, JJ.
GUIDRY, Judge.
Plaintiff, Jane T. Davis, obtained the issuance of a rule directing defendant, James D. Davis, to show cause why alimony and child support payments allegedly past due should not be paid and why the defendant should not be held in contempt of court for his refusal to comply with the judgment ordering such payments. Following the filing of the instant rule, the defendant sought to remove this suit to the United States District Court for the Western District of Louisiana. The Federal Court denied defendant's removal petition and remanded the case to the Ninth Judicial District Court for trial. Following remand, judgment was rendered by the trial court dismissing both plaintiff's demand for past due alimony and her demand that defendant be held in contempt of court.[1] Further, the trial court ordered defendant to pay $530.00 in past due child support payments plus legal interest from the date of demand until paid. The trial court awarded attorney's fees to the plaintiff in the sum of $1800.00 and assessed all costs of the proceedings to the defendant.[2] Plaintiff appealed. Defendant answered plaintiff's appeal seeking a reversal of the trial court's awards of past due child support and attorney's fees. In the alternative, defendant seeks a reduction of the trial court's award of attorney's fees alleging that the award is excessive and constitutes an abuse of discretion.
The issues presented on appeal are: (1) Did the defendant incur any obligation to plaintiff under the alimony decree of April 4, 1977? (2) Did the trial court err in concluding that the defendant owed $530.00 in past due child support payments? (3) Is the award of attorney's fees in the sum of $1800.00 excessive?

*596 FACTS
Plaintiff and defendant were married on October 10, 1959. Three children were born of that union, James D. Davis, III, Webster T. Davis, and Drew Anna Davis. At the time of trial in August, 1980, James and Webster were adults however, Drew Anna Davis was then 17 years old.
On April 6, 1972, the parties obtained a decree of absolute divorce. Custody of the parties' minor children was awarded to Mr. Davis. The record reflects that that judgment contained no provision for alimony in favor of Mrs. Davis.
On December 17, 1974, the judgment of divorce was amended to provide that custody of Webster T. Davis and Drew Anna Davis be transferred to Mrs. Davis and that the defendant, James D. Davis, pay to Mrs. Davis the sum of $500.00 per month in alimony and $250.00 in child support. On September 14, 1976 the judgment was again amended to award custody of James D. Davis, III to Mrs. Davis and increase alimony payments to $600.00 per month, the child support award remaining at $250.00 monthly.
Mrs. Davis remarried on March 25, 1977.
On April 4, 1977, after Mrs. Davis' remarriage, the divorce judgment was again amended in accordance with a joint stipulation entered into by the parties. This modification, which forms the basis of the instant dispute, increased plaintiff's alimony to the sum of $750.00 per month and decreased the amount of child support to the sum of $150.00 per month. In addition, defendant agreed to pay all reasonable medical expenses incurred by the parties' three children.
At trial of this matter, both parties testified that the alimony and child support payments provided for in the divorce judgment as amended were intended as child support. However, pursuant to an agreement between the parties, such payments were designated in the judgment partly as alimony so that the defendant could avail himself of certain tax advantages. In this regard, defendant testified as follows:
"... during this period of time ... us... we made various agreements, Mrs. Davis and myself, with regard to child support, you know, about increasing it. It increased, you know, everytime we talked. The alimony thing that she is talking about was really a tax break for me because of the bracket that I was in. I never intended to pay her alimony at all because she was working, we were divorced and she knows as well as I do that all of this was ... that I was paying was for the children, not for her ... not for her expenses, not for her upkeep or anything else. My statement to my children was, and still is, that I want them to live as well with their mother as they would have with me and to that end I have sent everything that I could, when I could, I've given them a car, I've given them, you know, everything ..."
The record reflects that the defendant regularly met his alimony and child support obligations until September of 1978 at which time defendant ceased to make monthly payments. Defendant testified that he and Mrs. Davis mutually agreed on or about January, 1979 that the alimony and child support payments would no longer be paid on a regular monthly basis due to a change in the defendant's professional and financial status. Contrary to defendant's testimony, plaintiff stated that no such agreement had been reached, rather, Mrs. Davis testified that she urged the defendant to seek a judicial modification of the divorce judgment lowering the total amount of support due and designating the entire sum as child support. Mrs. Davis stated that the defendant failed to take such action. Defendant's alleged refusal to meet his alimony and child support obligations culminated in the filing of the instant suit.
DID THE DEFENDANT INCUR ANY OBLIGATION TO PLAINTIFF UNDER THE ALIMONY DECREE OF APRIL 4, 1977?
The trial court, in written reasons, concluded that the alimony provision ($750.00 *597 monthly) of the April 4, 1977 judgment was unenforceable because under LSA-C.C. Art. 160, alimony terminates when the spouse receiving such payments remarries.[3] Thus, the trial court determined that since Mrs. Davis was already remarried prior to the date of the judgment, the alimony portion of that judgment had no legal effect.
Plaintiff asserts error in this conclusion contending that the general rule that alimony terminates by operation of law upon the remarriage of the spouse receiving such payments is inapplicable to the instant case. Plaintiff avers that the rule does not apply where defendant has full knowledge of his ex-spouse's remarriage yet freely and voluntarily enters into a stipulation providing for the continuance of such payments. In support of her argument, plaintiff contends that the instant case is analogous to the decision in Shows v. Shows, 345 So.2d 975 (La.App. 2d Cir. 1977) wherein the court concluded that a husband who obtained a separation from bed and board based upon his wife's fault, and who thereafter, consented to a judgment in her favor for permanent alimony after divorce, and who did not appeal from such judgment, could not, in a subsequent proceeding, raise the issue of his wife's nonentitlement to alimony by reason of her fault. On the other hand, the defendant contends that his obligation for alimony payments ceased upon plaintiff's remarriage which actually occurred prior to rendition of the judgment of April 4, 1977.
After carefully reviewing the record in light of recent jurisprudence, we conclude that the learned trial judge erred in determining that the alimony provision of the April 4, 1977 judgment is unenforceable. We reach this conclusion because we find that although the April 4, 1977 judgment was framed so as to award plaintiff alimony in the amount of $750.00 monthly, it is clear from the record that the provision for such payments, pursuant to an agreement between the parties, was intended as child support under LSA-C.C. Article 227 and not as alimony under LSA-C.C. Article 160. This being so, we need not consider the issue as to whether or not under the peculiar circumstances of this case, the defendant would be estopped, as plaintiff contends, to question the validity of this provision.
In the recent case of Dubroc v. Dubroc, 388 So.2d 377 (La.1980), our Supreme Court considered the effect which a bilateral agreement entered into by the parties could have on a divorce judgment providing for child support payments. In Dubroc, supra, the mother was awarded custody of the parties' two children and child support in the amount of $250.00 monthly. Subsequent to rendition of the judgment, the parties agreed that the father would take custody of one of the children and his obligation of child support payments to the mother would be reduced by one-half. Neither party complained of this arrangement until Mrs. Dubroc instituted a rule to make past due child support executory in support of which she urged that such judgment was enforceable as written until judicially modified. The issue in Dubroc, supra, was simply whether or not the parties to a divorce judgment could agree bilaterally to modify the terms of the judgment. In rejecting *598 Mrs. Dubroc's demand, our Supreme Court stated:
"The Civil Code nowhere mandates a lawsuit for a change in alimony, and the Code of Civil Procedure merely provides for the proper procedure in seeking arrearages."
. . . .
"Since the parent's duty of support and upbringing is a legal duty owed to the child, it cannot be renounced or suspended.3 There is no prohibition, however, expressed by the law against a spouse's agreement to suspend his right to compel the other parent without custody to turn over to him in advance money necessary for the child's maintenance. Of course, an essential prerequisite to such a conventional modification of a parent's right to receive support payments is implied. The parent may not, by suspension of this right, thwart the purpose for which the right is established, i. e., the enforcement of the child's right to support and upbringing.
For these reasons, an agreement by a parent to suspend his right to receive child support payments will not be enforced unless it meets the requisites for a conventional obligation and fosters the continued support and upbringing of the child. To allow the parent to suspend his right to receive support payments under circumstances contrary to the child's interests, would be inimical to the ultimate goal of support and upbringing of the child. On the other hand, if the parties clearly agree to a suspension of the payments, and such agreement does not interrupt the child's maintenance or upbringing or otherwise work to his detriment, the agreement should be enforceable."
The issue presented to this court in the instant case is similar to that confronted by our Supreme Court in Dubroc, supra. In both cases the issue is whether or not a judgment may be modified, as between the parties, by a conventional agreement. Here, we are not concerned with modification of a divorce judgment via a bilateral agreement entered into subsequent to rendition of the divorce judgment, but rather, we are concerned with a bilateral agreement entered into by the parties simultaneously with the rendition of the divorce judgment which provided that the judgment be "framed" in such a manner as to provide for the maintenance and support of the parties' children in an agreed amount and at the same time afford the defendant a substantial tax advantage. As the court in Dubroc noted, the primary interest of the court is to insure the uninterrupted maintenance and support of the parties' children. Therefore, if the bilateral agreement does not thwart the purpose and intent of the judgment, then there is no reason why such an agreement should not be enforced. In Dubroc, the Court found that the agreement did not interrupt the child's maintenance and upbringing and was therefore, enforceable. In the instant case, the agreement was entered into in furtherance of the defendant's obligation to support his minor children, and at the same time, afford him a measure of tax relief. Defendant should not now be permitted to repudiate this agreement by urging that, as framed, the judgment provides for child support in the amount of only $150.00 monthly. A refusal to enforce the agreement entered into by the parties herein would clearly contravene the intent of the divorce judgment as the intendment of that judgment was for the sum designated as alimony to be utilized for the support and maintenance of the parties' children.
We recognize the potential danger of enforcing agreements entered into by parties to a judgment which alter the terms of such judgments. However, after reviewing the instant record in light of Dubroc, supra, we conclude that the agreement entered into by plaintiff and defendant is enforceable and that defendant's obligation for child support under the judgment of April 4, 1977 is in the sum of $900.00 monthly.
DID THE TRIAL COURT ERR IN CONCLUDING THAT THE DEFENDANT OWED $530.00 UNDER THE CHILD SUPPORT PROVISION OF THE 1977 JUDGMENT?
Defendant in his answer to the appeal seeks reversal of the trial court's *599 judgment ordering him to pay $530.00 in alleged arrearages under the child support provision of the April 4, 1977 judgment ($150.00 monthly). Although defendant at trial sought no credits for alleged "excess" payments, he contends on appeal that the record clearly establishes that he has met his obligations under the child support provision of the judgment of April 4, 1977. The record contains several checks totaling $2620.00 made out by the defendant to the plaintiff during the period in dispute. The record also contains a check in the sum of $3000.00 which was paid by Mr. Davis to the plaintiff in accordance with a verbal agreement between the parties relative to the payment of the plaintiff's income taxes as well as checks in the sum of $1000.00 and $708.40, representing payment by defendant of medical expenses incurred by the parties' three children. Also, the record includes numerous checks totaling $625.00 which were given directly to the parties' children by the defendant. The trial court concluded that Mr. Davis owed child support payments of $150.00 per month for the period extending from September 1, 1978 to May 1, 1980, a total of $3150.00. The trial court next determined that only those payments made directly to Mrs. Davis by the defendant in fulfillment of his child support obligations could be credited to the total amount owed by him. Therefore, the court concluded, Mr. Davis owed to plaintiff the difference between the total amount due of $3150.00 and the amount paid directly to Mrs. Davis of $2620.00 or a total of $530.00. We find no error in the conclusions of the trial court. It is well settled that the obligation of the father is to support the minor children by making payments to the mother, and it is only by so complying that he fulfills his obligation. See Graval v. Graval, 355 So.2d 1057 (La.App. 4th Cir. 1978); Simon v. Calvert, 289 So.2d 567 (La.App. 3rd Cir. 1974); Rodriguez v. Rodriguez, 245 So.2d 765 (La.App. 4th Cir. 1971). The end result is that plaintiff is entitled to a credit on the total amount of support in arrears in the sum of $2620.00.

IS THE AWARD OF ATTORNEY'S FEES IN THE SUM OF $1800.00 EXCESSIVE?
Finally, defendant contends that the trial court's award of attorney's fees under LSA-R.S. 9:305[4] in the amount of $1800.00 is excessive and constitutes an abuse of discretion. On the other hand, plaintiff seeks an increase in such award for legal services rendered on appeal.
After evaluating the time and effort expended by plaintiff's attorney in connection with the instant suit, we concur with the trial court's award of attorney's fees in the sum of $1800.00 and conclude that such an award does not constitute an abuse of that court's discretion. We will not increase the award for services on appeal because we believe that the sum awarded at the trial level is sufficient to compensate plaintiff's counsel for services rendered at both the trial level and on appeal.
For the above and foregoing reasons, the judgment appealed from is affirmed in part, reversed in part, and recast as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of Jane T. Davis and against James D. Davis for the full sum of $18,980.00 ($900.00 times 24 months less a credit of $2620.00) representing past due child support payments in arrears for the period from September 1, 1978 through August 1, 1980 (date of trial of rule) with legal interest from the date of judicial demand until paid together with all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Jane Thompson Davis and against James D. Davis awarding unto plaintiff in rule the sum of $1,800.00 as attorney's fees.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the demands *600 by the plaintiff in rule that the defendant in rule be held in contempt of court is dismissed.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant in rule, James D. Davis, pay all costs of these proceedings at the trial level and on appeal.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
SWIFT, J., concurs, believing that the doctrine of equitable estoppel is applicable.
NOTES
[1] Plaintiff does not complain on appeal of the trial court's refusal to hold defendant in contempt.
[2] The trial record indicates that the defendant filed an Exception of Unauthorized Use of Summary Proceeding. The trial judge notes in his written reasons for judgment that he is unable to recall if any action was taken in regard to defendant's exception. We observe from the record that this exception has not been disposed of and was apparently abandoned.
[3] LSA-C.C. Art. 160 provides:

"When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse. In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training, or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.
In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capacity, in light of all other circumstances.
This alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries."
[4] LSA-R.S. 9:305 provides:

"When the court renders judgment in an action to make past due alimony or child support executory, except for good cause, the court shall award attorney's fees and court costs to the prevailing party."