GULOTTA, Judge.
A divorced mother appeals from two separate judgments respectively ordering her: 1) to pay her two minor sons’ annual school tuition in excess of the sum of $3,300.00 paid by the father; and 2) to reimburse the father $6,428.81 in tuition paid by him. We affirm the earlier judgment ordering the wife to bear a share of the tuition expenses, but we reverse the later judgment ordering reimbursement to the husband.
On October 15, 1981, the- father, Dr. Natchez Morice, Jr., was ordered to pay, inter alia:
“... all expenses of the schooling for the children including the cost of tuition, books, uniforms, and required fees and any transportation expenses.... ”
Pursuant to this judgment, Dr. Morice paid tuition for the boys at New Orleans Academy in 1981-82 at a cost of $3,300.00 per year.
On August 3, 1982, Dr. Morice filed a “Rule to Change Child Support”, alleging that his wife was proposing to enroll the boys at much more expensive private schools, instead of maintaining the younger son at New Orleans Academy and sending the older one to Jesuit High School where he had recently been accepted for admission. Dr. Morice sought a ruling from the court that the boys attend NOA and Jesuit or, alternatively, that the child support be “changed” to make him responsible only for the costs of tuition at the named schools instead of the more expensive ones proposed by the wife.
While Dr. Morice’s rule was pending, the parties reached a community property settlement on October 28, 1982. As part of *1250 this compromise, they agreed to regard all past motions and judgments against each other as satisfied. Dr. Morice’s rule, therefore, was abandoned without being heard. Meanwhile, the boys had entered Isidore Newman School and Metairie Park Country Day School against Dr. Morice’s wishes.
On November 15, 1982, however, Mrs. Morice filed a “Motion for Contempt and For Accumulation”, alleging that Dr. Mor-ice owed $9,422.00 for the cost of educating the boys at Newman and Country Day for the 1982-83 term. Before the rule was heard, Dr. Morice paid Mrs. Morice $3,300.00, a sum equivalent to the cost of tuition at New Orleans Academy and Jesuit.
After trial on the merits, the trial court on January 11, 1983 allowed Mrs. Morice to retain the $3,300.00 already paid by Dr. Morice, but further decreed:
“Any tuition or school expenses incurred on behalf of the Morice children above and beyond that amount shall be discharged by Mrs. Natchez Morice.”
Subsequently, Dr. Morice paid the remaining tuition due at Newman and Country Day. He thereafter filed a rule against Mrs. Morice to make past due school tuition executory in the amount paid by him to the schools. On June 22, 1983, the trial judge ordered Mrs. Morice to reimburse Dr. Mor-ice $6,428.81 for the additional tuition paid by him.
Appealing from the judgments of January 11 and June 22, 1983, Mrs. Morice raises essentially three arguments: 1) that Dr. Morice is not entitled to any relief since he abandoned his rule to change child support by the October 28, 1982 community property compromise; 2) that the trial court erred in interpreting the October 15, 1982 judgment to limit Dr. Morice’s tuition obligation to $3,300.00 per year; and 3) that the $6,428.81 judgment in favor of Dr. Morice is erroneous because any amount paid to the schools in excess of his child support obligation is deemed a gift to the children for which he cannot obtain reimbursement or credit.
We reject Mrs. Morice’s contention that Dr. Morice is barred from relief because he did not re-urge his rule to reduce support or offer proof of a change in his financial ability to bear the cost of the increased tuition.
The court, by its January 11, 1983 judgment, did not change the earlier October 15, 1981 judgment, but rather clarified and made more certain an open-ended judgment. The court determined that the October 15 judgment obligating Dr. Morice to pay “all expenses for the schooling of the children” included the cost of tuition for the boys at schools equivalent to those they were attending at the time of the judgment, but not at private schools costing nearly three times as much. The question presented in the hearing resulting in the January 11, 1983 judgment was not one of a reduction or change of circumstances, but rather a clarification and judicial determination of the indefinite wording of the October 15, 1981 judgment.
Furthermore, as pointed out in the written reasons for the January 11, 1983 judgment, the effect of Mrs. Morice’s motion for contempt is to ask the court “... indirectly to find that Dr. Morice’s child support obligation extends to the additional tuition expenses of Country Day and Newman Schools.” Following Mrs. Morice’s argument to its logical conclusion would require that she, not Dr. Morice, have filed a motion for an increase for entitlement to the higher tuition at the new schools.
We likewise find no error in the trial judge’s interpretation of the October 15, 1981 judgment. In well written reasons the trial judge stated:
“To determine whether Dr. Natchez Morice is in contempt of the child support judgment dated October 15, 1981 the Court must interpret that order to discern its true intent....
“For the aforementioned reasons the Court is bound to read the October 15, 1981 judgment restrictively, and in doing so dismisses Mrs. Morice’s rule for contempt. That judgment would have allowed Mrs. Morice to continue to send *1251 the Morice children to New Orleans Academy or to any other school with comparable tuition and transportation expenses. If a change of schools had been contemplated by Mrs. Morice, a rule to show cause would have been promptly set on the Court’s docket to determine to what extent Dr. Morice’s obligation to pay the tuition and transportation expenses of his children did lie. The October 15, 1981 judgment was rendered to do justice to both parties. To allow one of the parties to give an arbitrary interpretation of that judgment to the detriment of the other would be contrary to its recognized intent....
As a supplement to the above-quoted reasons, we need only point out that a judgment ordering a father to pay “all expenses for the schooling for the children” implies all reasonable expenses, and does not give the mother license to send the children to new schools at nearly triple the cost of their accustomed tuition expense. Indeed, as pointed out by Dr. Morice at trial, giving effect to Mrs. Morice’s interpretation of the October 15 judgment at Dr. Morice’s expense could lead to the result of permitting her to send the boys “wherever she wanted to, perhaps Switzerland and commute on a Concord.” We point out also, as indicated by the trial judge, there has been no “demonstrated need for a change of school.” Accordingly, we find no error in the trial court’s January 11, 1983 judgment.
We reach a different result, however, regarding the June 22, 1983 judgment condemning Liselotte Morice to reimburse Dr. Morice the $6,428.81 he paid on behalf of his children directly to Newman and Country Day Schools.
Although Dr. Morice had satisfied his tuition obligation under the January 11, 1983 judgment by paying $3,300.00 to Mrs. Morice, the $6,428.81 in excess that he later paid directly to the schools can only be considered as a “gift” to his children that he cannot recover from his former wife. Our jurisprudence is well settled that a non-custodial parent who makes a payment of this nature to a third party on behalf of his minor children cannot obtain reimbursement or credit. See Graval v. Graval, 355 So.2d 1057 (La.App. 4th Cir.1978); Thompson v. Courville, 372 So.2d 579 (La.App. 3rd Cir.1979); Davis v. Davis, 405 So.2d 594 (La.App. 3rd Cir.1981), writ denied 409 So.2d 659 (La.1982). Having so concluded, we reverse the June 22, 1983 judgment.
Accordingly, the judgment of January 11, 1983 is affirmed. The judgment of June 22, 1983 is reversed, rescinded and set aside. Each party to pay his or her costs.
EARLIER JUDGMENT AFFIRMED; LATER JUDGMENT REVERSED, RESCINDED AND SET ASIDE.